2005 ME 21

**Karen WALKER**

v.

**Joseph WALKER.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Sept. 9, 2004.

Decided: Feb. 2, 2005.

Anthony J. Sineni III, Esq., Peter J. Cyr, Esq., Law Office of Anthony J. Sineni III, LLC, Portland, for plaintiff.

Jens–Peter W. Bergen, Esq., Kennebunk, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

SAUFLEY, C.J.

[¶ 1] Karen Walker appeals from a judgment entered in the District Court (Biddeford, *Janelle, J.*) modifying her ex-husband's child support obligation, in which

the court concluded that Joseph Walker's one-time severance payment from his former employer does not fall within the statutory definition of "gross income" contained in 19–A M.R.S.A. § 2001(5)(A) (Supp.2004). We conclude that the Legislature intended to include lump sum severance pay within the definition of gross income. Accordingly, we must vacate the court's judgment and remand for further child support calculations.

## I. BACKGROUND

[¶ 2] On January 28, 2000, the court (*Levy, J.*) entered a judgment of divorce between the parties to this appeal. The court granted the parties shared parental rights and responsibilities, including shared physical residence of their two minor children. The father was ordered to pay the mother child support on a bi-weekly basis.

[¶ 3] On December 7, 2001, the father filed a motion for modification of child support following termination of his employment. The father based his motion on the fact that his new salary was substantially less than with his former employer. After filing the motion, the father received a one-time severance payment from his former employer and then appropriately filed an amended child support affidavit to reflect this payment as an addition to his 2002 income.

[¶ 4] After a hearing on the motion, the trial court's judgment, dated April 22, 2003, was entered on the docket on April 28, 2003. The court concluded, among other things, that the severance payment received by the father was not part of his gross income with respect to the child support calculations, because it did not derive from an "ongoing source" pursuant to 19–A M.R.S.A. § 2001(5).

[¶ 5] The mother filed a motion for reconsideration on May 9, 2003, which was denied on May 19, 2003. She also filed a notice of appeal on May 16, 2003, erroneously directing the appeal to the Superior Court and including no filing fee. A corrected notice of appeal to the Law Court was filed with the appropriate filing fee on June 4, 2003. The father filed a cross-appeal on June 6, 2003.

## II. DISCUSSION

### A. Timeliness of the Appeal

[¶ 6] An appeal in a civil case must be filed within twenty-one days of the entry of judgment unless the timeline is suspended by a motion to amend or alter the judgment. M.R.App. P. 2(b)(3).[1] The entry date is the date that the judgment appealed from is entered into the docket. Alexander, *Maine Appellate Practice* § 2.6(c) at 38 (2004).

[¶ 7] The mother filed a motion for reconsideration on May 9, 2003. Such motions are to be treated as motions to alter or amend and "shall be served not later than 10 days after entry of the judgment." M.R. Civ. P. 59(e). Because the judgment was entered on April 28, Rule 59(e) calls for *service* of the motion by May 8. The

---

1. The Rule states in pertinent part:
   The time within which an appeal may be taken in a civil case shall be 21 days after entry of the judgment or order appealed from unless a shorter time is provided by law .... The running of the time for appeal is terminated by a motion made pursuant to any of the following rules and filed within the time required for filing the motion, and

   the full time for appeal fixed in this subdivision commences to run and is to be computed from the entry of an order ... granting or denying: ... (iii) a motion under M.R. Civ. P. 59 to alter or amend the judgment including a motion for reconsideration of the judgment ....
   M.R.App. P. (2)(b)(3).

record shows no evidence of when the father was served with the mother's motion for reconsideration; the docket only reveals a *filing* date of May 9. While the father claims that the motion was untimely because it was filed late,[2] he does not address the issue of whether or not he was timely *served.* With no evidence of, nor challenge to, the timeliness of service of the Rule 59(e) motion, we assume that the motion for reconsideration was served within the required ten-day period, thus suspending the running of the appeal period until the ruling on the motion.

[¶ 8] The court·denied the motion for reconsideration on May 19, 2003. Therefore, pursuant to M.R.App. P. 2(b)(3) and M.R. Civ. P. 59(e), the mother was required to file a notice of appeal within twenty-one days after the denial of her motion, or by June 9, 2003. She filed a corrected notice of appeal, complete with the filing fee, on June 4. Accordingly, her appeal was timely filed with respect to the judgment entered on April 28.[3]

B. Severance Pay as Gross Income

■ [¶ 9] We turn, then, to the computation of the father's income for the purpose of addressing the motion to amend child support.[4] The issue presented is whether the lump sum severance payment that the father received from his former employer should be included in his gross income for the purposes of child support calculations.

[¶ 10] The statutory definition of gross income reads in pertinent part:

Gross income includes income from an ongoing source, including, but not limited to, salaries, wages, commissions, royalties, bonuses, dividends, *severance pay,* pensions, interest, trust funds, annuities, capital gains, social security benefits, disability insurance benefits, prizes, workers' compensation benefits, spousal support actually received ..., and education grants, fellowships or subsidies that are available for personal living expenses.

19–A M.R.S.A. § 2001(5)(A) (emphasis added).[5] Although the statute expressly includes the term "severance pay" as an example of gross income for the purposes of child support calculations, it introduces the example as income that is derived from an "ongoing source." Thus, the father contends that because his employment was terminated and the source from which this payment derived could not be considered "ongoing," the District Court was correct to exclude the severance payment from his gross income.

■ [¶ 11] We review the interpretation of a statute directly for errors of law. *Town of Ogunquit v. Dep't of Pub. Safety,* 2001 ME 47, ¶ 7, 767 A.2d 291, 293. When construing a statute, we first seek to give

2. In his brief, the father erroneously identified the date from which to measure the filing and service deadlines as April 22, the date of the judgment, rather than April 28, the date of *entry* of the judgment.

3. In November, the hearing was reopened for the limited purpose of taking additional testimony regarding the eldest son's residence during a particular time period, after which the court entered a new judgment on November 5, 2003. Corrected judgments were entered on February 9 and March 1, 2004, in response to the father's motions to modify.

Neither party raises the lack of any appeal from the November or February judgments as an issue.

4. We have considered the other issues on appeal and conclude that they do not merit discussion.

5. The statute goes on to supply additional definitions of gross income that stem from employment-related compensation, such as expense reimbursements and gross receipts. 19–A M.R.S.A. § 2001(5)(B), (C) (1998).

effect to the legislative intent by examining the plain meaning of the statutory language. *Charlton v. Town of Oxford,* 2001 ME 104, ¶ 10, 774 A.2d 366, 371. When the statutory language is ambiguous, we look beyond its plain meaning and examine other extrinsic factors, such as the statute's history, to ascertain legislative intent. *Dep't of Human Servs. v. Monty,* 1998 ME 11, ¶ 4, 704 A.2d 401, 403. We also examine "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Davis v. Scott Paper Co.,* 507 A.2d 581, 583 (Me.1986).

[¶ 12] Reading section 2001(5) in its full context reveals that gross income for the purposes of child support calculations generally includes all payments received by a parent in the scope of employment. The list, which is not exhaustive, includes salaries, wages, commissions, royalties, dividends, severance pay, and pensions, among other things. These payments are all associated with compensation for employment. The father in the present case received the severance payment as a lump sum from his employer at the termination of his employment. That severance payment is therefore also in the nature of income related to employment.

[¶ 13] Thus, the severance payment at issue would certainly fall within the definition of gross income but for the introductory phrase indicating that the payment must be from an ongoing source. We have previously held that a lump sum payment that derives from a lawsuit settlement is not from an ongoing source, "because the source does not persist but rather vanishes upon satisfaction of the settlement agreement." *Monty,* 1998 ME 11, ¶ 6, 704 A.2d at 403. There, the payments at issue were unrelated to employment compensation, and a single payment was made from a single source. In contrast, the severance payment here generated from what had been an ongoing source—the father's employer. The fact that it was the last payment from the employer should make no difference. If it did, the last payment of any wages from an employer would have to be excluded from income because it did not represent a payment that would be followed by another and thus would not be from an ongoing source. We must reject that restrictive interpretation of "ongoing source."

[¶ 14] Moreover, an examination of the history of the statute reveals no legislative intent to distinguish lump sum severance pay from a severance package that is disbursed over time. Although severance pay is made upon the termination of employment, no matter what form it takes it is payment derived from what *was* an "ongoing source"—employment compensation.

[¶ 15] Accordingly, we conclude that the Legislature intended to include severance pay, regardless of how the payments are made, in the definition of gross income for the purposes of child support calculations pursuant to 19–A M.R.S.A. § 2001(5)(A).

[¶ 16] Because the determination of the father's income may affect other aspects of the judgment, we vacate the order and remand for further consideration of all aspects of the child support calculations that were before the court.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.