2000 ME 128

**DEPARTMENT OF HUMAN SERVICES**

v.

**Robert FRYE.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 15, 2000.

Decided June 30, 2000.

---

Andrew Ketterer, Attorney General, Melissa Reynolds O'Dea, Asst. Attorney General, Bangor, for plaintiff.

Robert Frye, Ellsworth, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

ALEXANDER, J.

[¶ 1] Robert Frye appeals the paternity judgment of the Superior Court (Hancock County, *Mead, J.*) finding Frye to be Justin W.'s biological and legal father, awarding the State of Florida $7910 for past child support, awarding Angela Meabon $3274 for past child support for periods she was not receiving public assistance, and imposing a weekly child support obligation of $37 on Frye. On appeal Frye contends that the court erred in (i) applying Maine law to determine the amount of Frye's child support arrearage to the State of Florida and the amount of his arrearage and prospective child support obligations to Angela Meabon; (ii) not imputing income to Meabon; and (iii) considering child care expenses for Meabon's two younger children in its child support calculations. We affirm.

## I. CASE HISTORY

[¶ 2] The parties do not dispute the facts. Robert Frye is a resident of Maine. Angela Meabon is a resident of Florida, but was romantically involved with Frye in Maine, where their son was conceived. Meabon gave birth to Justin in Florida on September 23, 1986. Meabon is the mother of two other children, ages 5 and 10, who live with her and her current fiancé. She is not presently employed.

[¶ 3] In May 1996, the State of Florida petitioned the Maine Department of Human Services to commence an action to establish Frye's paternity and to obtain an order for past and future child support. Frye stipulated that he is Justin's biological father.

[¶ 4] Following a hearing, the court issued the paternity judgment from which Frye appeals.

## II. DISCUSSION

[¶ 5] Frye argues that choice of law rules support the application of Florida law to this case and that Florida law would not support as large an award.[1]

[¶ 6] This issue is governed by the Uniform Interstate Family Support Act, 19-A M.R.S.A. §§ 2801-3401 (1998 & Supp. 1999). Pursuant to sections 3001(2)(A) & 3051(1)(B) (1998), a responding tribunal of this state may issue a child support order if a "support enforcement agency" located in another state petitions for such an order and a support order has not yet been issued in either that state or this state.

---

1. According to Frye, Florida law would preclude a retroactive support award for time periods more remote than 24 months from the date of the petition and would mandate an imputation of income to Meabon because her decision not to work is voluntary. We do not determine if Frye's arguments regarding Florida law are correct.

Choice of law issues are governed by section 3003, which states:

**Application of law of this State**

Except as otherwise provided by this chapter, a responding tribunal of this State shall:

**1. Procedural and substantive law; powers and remedies.** Apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in this State and may exercise all powers and provide all remedies available in those proceedings; and

**2. Determine duty and amount of support.** Determine the duty of support and the amount payable in accordance with the law and support guidelines of this State.

19-A M.R.S.A § 3003 (1998).

[¶ 7] Subsection 1 requires that the responding tribunal apply choice of law rules to matters arising under the Uniform Interstate Family Support Act. However, subsection (2) expressly provides that when the issue is the duty to pay and the amount to pay, Maine law will be applied. There is good reason for this position, to assure ease of calculation and to avoid the need to change support orders and determine other states' requirements as a child may move from state to state. Because Frye's only complaint is that application of the Florida statutes would result in a lesser award, his argument is without merit.

■ [¶ 8] Frye also argues that because Meabon's unemployment is voluntary, the court was required to impute income to her for purposes of computing his child support obligation.

[¶ 9] Pursuant to 19-A M.R.S.A. § 2001(5)(D) (1998):

**2.** 19-A M.R.S.A. § 3016(6) (1998) states:

**6. Testimony not in person.** In a proceeding under this chapter, a tribunal of this State may permit a party or witness residing in another state to be deposed or to testify by telephone, audiovisual means or other electronic means at a designated tribunal or other location in that state. A

5. **Gross income.** "Gross income" means gross income of a party as follows

. . . .

D. Gross income *may* include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, *if sufficient evidence is introduced* concerning a party's current earning capacity. In the absence of evidence in the record to the contrary, a party that is personally providing primary care for a child under the age of 3 years is deemed not available for employment. The court *shall* consider anticipated child care and other work-related expenses in determining *whether* to impute income, or how much income to impute, to a party providing primary care to a child between the ages of 3 and 12 years. . . .

*Id.* (emphasis added).

[¶ 10] Meabon testified by telephone[2] that she does not currently work because her fiancé takes care of her. She testified that she had worked in low wage jobs and that she had training in the health care field. Meabon testified that she would incur child care costs for her youngest child if she were to return to work because his kindergarten classes are only in session from 9:30 A.M. to 2:30 P.M. and the after-school program would cost $75 per week.

■ [¶ 11] Frye's complaint is essentially that he would have a lesser weekly obligation if the court had imputed income to Meabon. While a court, on appropriate facts, may impute income to one obligated to pay child support, *see Finn v. Finn,* 517 A.2d 317, 318–19 (Me.1986), such a deter-

tribunal of this State shall cooperate with tribunals of other states in designating an appropriate location for the deposition or testimony.

Section 3016(6) makes an adjustment from the generally applicable Rule, M.R. Civ. P. 43(a) that testimony "shall be taken orally in open court, unless otherwise provided . . . ."

mination is discretionary with the trial court. The court did not abuse its discretion by imposing a $37 per week obligation on Frye when testimony indicated that it would cost Meabon twice that amount in child care costs to work.

[¶ 12] Frye finally argues that the court's order is fundamentally unfair because he is being required to pay more money because of child care costs for Meabon's other children, whom he does not have a responsibility to support. Section 2001(5)(D) provides, "The court shall consider anticipated child care and other work-related expenses in determining whether to impute income, or how much income to impute, to a party providing primary care to a child between the ages of 3 and 12 years." *See* 19–A M.R.S.A. § 2001(5)(D). Because the statute does not state "the child," the court may consider expenses generated as a result of other children who are the primary care giver's responsibility. Notably, Frye's obligation was reduced because of his own child care costs for other children.

The entry is:

Judgment affirmed.