2004 ME 113

**Barbara (Erickson) KOSZEGI**

v.

**Donald A. ERICKSON Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 27, 2004.
Decided: Aug. 31, 2004.

Richard L. Currier, Currier & Trask, P.A., Presque Isle, for plaintiff.

Donald A. Erickson, Jr., Madera, CA, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Donald A. Erickson Jr. appeals from post-judgment orders entered by the District Court (Caribou, *Griffiths, A.R.J.*), which (1) modified primary residence of a minor child from Donald Erickson to the mother, Barbara (Erickson) Koszegi; (2) altered the parties' child support obligations; (3) ordered Koszegi to pay back child support and Erickson to pay back spousal support; and (4) denied each par-

ty's motion for contempt. Erickson contends that the trial court erred in computing the gross income of both parties, in failing to find Koszegi in contempt of the prior child support order, and in setting his combined spousal and child support obligation at more than fifty percent of his disposable military retirement pay. Koszegi requests that we impose sanctions pursuant to M.R.App. P. 13(f) because Erickson makes unsubstantiated allegations of bias against the trial court.

[¶ 2] The only issues which merit discussion relate to the combined child support and spousal support obligations, and the District Court did not err in its address of those matters. Accordingly, we affirm.

## I. CASE HISTORY

[¶ 3] The parties lived in Maine prior to the 2002 divorce, but now the parties and their children live in other states. The parties elected to file their respective petitions to modify and for contempt in Maine, and both traveled to Maine for the hearing. Maine retains continuing subject matter jurisdiction over the matter. *See* 19–A M.R.S.A. § 1746 (Supp.2003).

[¶ 4] In the 2002 divorce, Erickson was ordered to pay $400 per month in spousal support for a period of ninety-six months. By agreement, Erickson had primary physical custody of the parties' older son, and Koszegi, of the younger son. The respective child support calculations netted out to Erickson paying Koszegi $47 per week. This arrangement lasted until March 2002, when the younger son moved to live with Erickson. The parties executed a joint motion to modify and stipulation dated March 29, 2002, reflecting the younger son's change of residence. Modification of child support was not addressed in the papers filed with the court at that time. The court (*Daigle, J.*) declined to address the motion to modify unless child support was addressed.

[¶ 5] In July 2002, pursuant to the request of the trial court, Erickson filed a child support worksheet and proposed orders to modify the divorce judgment and for child support. Those papers indicated that Koszegi's gross income included $3200 in spousal support paid to her by Erickson. The court (*Daigle, J.*) signed the proposed orders on July 11, 2002, requiring Koszegi to pay $121 per week in child support. Koszegi was not represented by counsel at that time. She asserts that she never received copies of those orders, and remained unaware of her child support obligation until the current dispute arose. The younger son returned to live with Koszegi in August 2003. Koszegi did not pay any child support for the period of time that both children were living with Erickson.

[¶ 6] Erickson voluntarily retired from the Air Force in July 2003. He missed two monthly spousal support payments immediately after the divorce, and one around the time of his retirement.

[¶ 7] Erickson filed a motion for contempt related to unpaid child support in February 2003. Koszegi filed a motion for contempt related to the unpaid spousal support in March 2003. Koszegi also filed a motion to modify in April 2003, seeking to modify her child support obligation, and a motion to modify in September 2003, seeking to formally change the younger son's residence and establish child support. The four motions were heard together in November 2003, after which the court (*Griffiths, A.R.J.*) issued orders resolving the issues.

[¶ 8] The first order formally changed the younger son's primary residence to Koszegi, and required Erickson to pay Koszegi $119.40 per week in child support. The court found Erickson to be voluntarily

underemployed, and imputed earning capacity to him at the $40,000 per year level he was earning while employed with the Air Force.

[¶ 9] In the second order, on Erickson's motion for contempt and enforcement of support and Koszegi's motion to modify, the trial court recalculated Koszegi's child support obligation for the period of time that the younger son lived with Erickson, excluding spousal support from her gross income pursuant to 19–A M.R.S.A. § 2001(5)(E) (Supp.2003). The court determined that Koszegi owed Erickson $110.76 per week for the period from April 4, 2002, to June 1, 2003, (when the older son graduated from high school), and $76.83 per week for the period from June 7, 2003, to August 29, 2003, for a total arrearage of $7644.39. The trial court did not hold Koszegi in contempt because it found that she was unaware that the July 2002 child support order had issued.

[¶ 10] In the third order, on Koszegi's motion for contempt, the trial court found that Erickson owed Koszegi $1200 in spousal support, and offset this amount against Koszegi's child support arrearage. The court declined to find Erickson in contempt.

[¶ 11] The trial court further found that Erickson owed child support for the period from August to November 2003, and offset that amount against Koszegi's arrearage, leaving a balance owed to Erickson of $5250.39, to be paid off in weekly installments of $50.

[¶ 12] Erickson then brought this appeal.

## II. LEGAL ANALYSIS

### A. Imputed Earning Capacity

[¶ 13] The trial court found that Erickson was voluntarily underemployed and imputed earning capacity to him to make his total gross annual income

$40,000. This was his reported income at the time of the divorce and the income Erickson had indicated on the child support worksheet that he had filed in July 2002. Erickson contends this finding is error because the documentation he provided at the hearing indicated that his income for 2003 was $28,968.98, and for 2002, was $36,000. The court's finding was based on evidence that Erickson, although retired and receiving a military pension, was only forty years old at the time of the hearing, had no apparent limitation on his work capacity, and had voluntarily chosen not to seek employment.

[¶ 14] It is within the trial court's discretion to impute earning capacity to a parent who the court finds is voluntarily underemployed. 19–A M.R.S.A. § 2001(5)(D) (1998). Section 2001(5)(D) authorizes gross income to "include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity." *Id.*; *see also Wrenn v. Lewis*, 2003 ME 29, ¶ 17, 818 A.2d 1005, 1010 (affirming finding that father who had "mistakenly failed to identify his responsibility for child support and alimony as more important than his personal preferences" was underemployed). The trial court's finding of Erickson's earning capacity is supported by sufficient evidence.

### B. Consideration of Spousal Support in Child Support Calculations

[¶ 15] Koszegi's child support payment for the period from March 2002 to August 2003, had been determined based on a gross income figure that included $3200 of spousal support paid to Koszegi by Erickson. Upon Koszegi's petition to modify her child support arrearage, the

trial court correctly determined, based on 19–A M.R.S.A. § 2001(5)(E), that it was error to have included the $3200 in spousal support in its income calculation, and reduced her child support obligation accordingly.

[¶ 16] Erickson argues that the trial court erred because, pursuant to 19–A M.R.S.A. § 2001(5)(E), spousal support should be excluded from gross income only if it is received from a payor who is *not* a parent of the child for whom support is being calculated.

[¶ 17] The statute governing calculation of gross income for the purpose of determining child support, 19–A M.R.S.A. § 2001(5), provides, in relevant part:

"Gross income" means gross income of a party as follows:

A. Gross income includes income from an ongoing source, including, but not limited to, salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust funds, annuities, capital gains, social security benefits, disability insurance benefits, prizes, workers' compensation benefits, spousal support actually received pursuant to a preexisting order *from a spouse who is not the parent of the child for whom support is being determined,* and educational grants, fellowships or subsidies that are available for personal living expenses. Gross income does not include child support received by either party for children other than the child for whom support is being determined.

. . . .

E. Gross income *of an obligor* does not include the amount of preexisting spousal maintenance *to a former spouse who is not the parent of the child for whom support is being determined* or a child support obligation actually paid pursuant to court or administrative order, or an appropriate amount of child

support being voluntarily paid by a party who has a legal obligation to support that child.

19–A M.R.S.A. § 2001(5)(A) & (E) (Supp. 2003) (emphasis added).

[¶ 18] The emphasized language was added to the statute in 2003. P.L.2003, ch. 123, § 1 (effective September 13, 2003). The summary accompanying the legislative document states that this amendment was intended to clarify that spousal support is not to be considered part of gross income for purposes of computing child support for children of the marriage. It states:

This bill clarifies that spousal support is not considered as part of the gross income of the recipient of child support in the computation of child support for the children of the marriage in an initial child support order and in any subsequent child support computation on an ensuing motion for children of that marriage.

. . . .

This bill ... clarif[ies] that the only spousal support that is to be considered in gross income is spousal support paid or received pursuant to an order established as the result of a marriage that does not involve the children for whom child support is being computed.

L.D. 235, Summary (121st Legis. 2003).

[¶ 19] The trial court properly excluded the spousal support paid by Erickson when calculating Koszegi's gross income.

### C. Military Retirement Pay Limitations on Support Awards

 [¶ 20] The Uniformed Services Former Spouses' Protection Act provides that a state divorce court may treat military "disposable retired pay ... as property of the member and his spouse in accordance with the law of the jurisdiction of such court[,]" and governs direct payments

from military retirement pay made in compliance with court orders in divorce cases, including alimony and child support payments. 10 U.S.C.A. § 1408(c) & (d) (1998 & Supp.2004). The Act limits the amount that can be distributed from retirement pay pursuant to orders for property distribution, alimony, or child support as follows:

> (e) Limitations.
>
> (1) The total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay.
>
> . . . .
>
> (4)(B) Notwithstanding any other provision of law, the total amount of the disposable retired pay of a member payable by the Secretary concerned under all court orders pursuant to this section and all legal processes pursuant to section 459 of the Social Security Act (42 U.S.C. 659) with respect to a member may not exceed 65 percent of the amount of the retired pay payable to such member that is considered . . . to be remuneration for employment that is payable by the United States.

10 U.S.C.A. § 1408(e)(1), (e)(4)(B) (1998).

[¶ 21] The gross amount of Erickson's retirement pay is $1409 per month. Three hundred forty-five dollars is allotted to Koszegi as property distribution, and $250 is withheld to pay state and federal taxes. Erickson contends that the disposable retired pay available to him to pay spousal and child support is $814. He contends that pursuant to 10 U.S.C.A. § 1408, the total amount the trial court may award as spousal and child support must be limited to fifty percent of this amount, or $407.[1] His current obligation is $400 per month in spousal support, plus $119 per week in child support.

[¶ 22] A trial court, in calculating spousal support and child support obligations, must look to the entire financial picture of each divorcing spouse including both earnings and earning capacity. Federal law governs direct payments or garnishments that may be ordered from military retirement pay, but it in no way restricts the court's capacity to award spousal support or child support which may be paid from any source other than military pay or military retirement pay. *See* 10 U.S.C.A. § 1408(e)(6).

[¶ 23] While Erickson had no other source of income at the time of trial, the trial court found that he was voluntarily underemployed. If his spousal and child support obligations cannot be satisfied from his retirement funds alone, he may find work and pay from other income. Erickson's choice to rely solely on retirement pay as his income does not void his support obligation. *See Black v. Black,* 2004 ME 21, ¶ 12, 842 A.2d 1280, 1286 (husband's choice to receive non-distributable military disability pay in lieu of retirement pay did not alter property distribution in final decree; it merely called for

---

1. Erickson asserts in his brief, although it is not in the record, that after the trial court's orders issued, an Immediate Child Support Income Withholding Order was served on the Defense Financial Accounting Services (DFAS), which processes his retirement payments. DFAS notified him that it could not fully satisfy the amounts of the court-ordered payments because they exceed fifty percent of his monthly disposable retirement pay. Erickson also cites to 19–A M.R.S.A. § 2604 (1998). This statute relates to garnishments of military retirement pay, and authorizes a former spouse to garnish by order of the court up to fifty percent of the disposable retired or retainer pay to satisfy child support or spousal support orders. 19–A M.R.S.A. § 2604. Title 15 U.S.C.A. § 1673 (1998) also places limits on amounts that may be garnished from disposable earnings. However, the record does not indicate that there has been any garnishment in this case.

an adjustment of the mechanism by which the property would be distributed).

[¶ 24] The trial court did not abuse its discretion in ordering Erickson to pay $119 per week in child support in addition to the preexisting spousal support obligation.

[¶ 25] The other issues addressed by the parties do not merit further discussion.

The entry is:

Judgments affirmed.