2007 ME 39

**Christina C. CAROLAN**

v.

**David A. BELL.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 11, 2007.

Decided: March 1, 2007.

Jennifer Nichols Ferguson, Fales & Fales, P.A., Lewiston, for plaintiff.

Justin W. Leary, Sharon, Leary & De-Troy, Auburn, for defendant.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: CLIFFORD, DANA, ALEXANDER, CALKINS, and SILVER, JJ.

Dissent: LEVY, J.

ALEXANDER, J.

[¶ 1] Christina C. Carolan appeals from a judgment entered in District Court (Lewiston, *LaVerdiere, J.*), determining child support obligations between her and David A. Bell. She asserts that the court erred by imputing to her, for purposes of calculating annual gross income: (1) the difference between the rent her parents charge her and the rent they charged the previous tenant; (2) an amount equal to her employer's cost of health insurance; and (3) income for eight hours of pay Carolan could be earning if she had a forty-hour work week.[1] Because the court

1. The annual gross income of each party, defined at 19–A M.R.S. § 2001(5) (2006), is

erred in imputing, as income, its estimate of the additional economic value of Carolan's rent and the wages she might earn if she worked additional hours, not available at her regular job, we vacate and remand.

## I.  CASE HISTORY

[¶ 2] Carolan and Bell are the parents of a son, now seven years old.  Carolan has no other children.  Bell has a thirteen-year-old daughter from a previous relationship.  In 2004, Carolan filed a parental rights action seeking child support for their son.  After issuing a preliminary child support order, the court bifurcated the parental rights issue and the support issue for separate consideration.

[¶ 3] The court (*Cote, J.*) entered its order on the nonfinancial parental rights issues on December 23, 2005.  The court ordered shared parental rights and responsibilities.  In essence, the order gave custody of the child to Bell from 6:00 P.M. on Sunday until the end of school on Thursday.  Carolan would pick up the child at school on Thursday and keep him until Sunday at 6:00 P.M. The parties do not dispute this shared parental rights arrangement.[2]

[¶ 4] In April 2006, the court (*LaVerdiere, J.*) held a hearing on the child support issue.  The testimony revealed the following facts relevant to this appeal.  Carolan has a high school diploma and a technical school degree for work in a dental laboratory.  In the past she has worked for various dental laboratories and has worked in the service industry.  At the time of hearing, Carolan was working as a dental assistant and earning $13.50 per hour.[3]

Carolan's employer's office is closed on Fridays;  therefore she works approximately thirty-three to thirty-five hours per week, Monday through Thursday.  She then takes her son to school on Friday, a twenty-eight-mile trip, and typically volunteers at the school that day.

[¶ 5] Carolan testified that her employer covers her health insurance costs, but because the health insurance premiums have risen, she has not received a pay raise in two years.  She was unaware of how much her employer actually pays to maintain her health insurance.

[¶ 6] Carolan rents a small single-family home that is owned by her parents.  She pays $1000 per month in rent and pays for all of the utilities.  Her oil bill for the 2005–2006 season was over $1000.  Carolan hopes to eventually purchase this home from her parents.  Her parents previously rented the home for $1300 per month.

[¶ 7] Testimony indicated that Bell lives rent-free in a home owned by his employer, Bell Farms, which is his family's corporation. A real estate broker testified that the fair rental value of the property was $900 to $1000 per month, although Bell claimed that it is much less.  The corporation owns several vehicles that Bell uses for personal purposes.  The corporation also pays most of his expenses, including his utility bills and insurance.  Bell's employer also pays for his children's health insurance.  Bell presented exhibits indicating that Bell's employer would pay $214.85 per month for a single person insurance plan and $386.73 per month for a parent and child(ren)'s plan.

the essential determination from which child support obligations for each party are calculated pursuant to 19–A M.R.S. § 2006 (2006) and the Child Support Table. *See* 19–A M.R.S. § 2011 (2006).

**2.**  The court (*LaVerdiere, J.*) amended this order on May 2, 2006.

**3.**  In 2004, Carolan's W–2 reflected earnings of just over $24,000.  Due to her decrease in hours when her son started kindergarten, Carolan's W–2 in 2005 reflected earnings of about $22,541.

[¶ 8] In lieu of closing arguments, the court instructed counsel to submit memoranda and proposed worksheets in support of their positions. Carolan argued that her gross income should be her income that is reported on her W–2 and that the court should not impute any additional income to her. Bell argued that the court should impute additional income to Carolan for: (1) the difference between her rent and the rent charged the prior tenant; (2) the value of the health insurance that Carolan's employer pays for her;[4] and (3) voluntary underemployment. The court adopted Bell's suggestions for imputing income in its findings and order addressing child support.

[¶ 9] The court calculated Carolan's gross income based on the following:

| Employment | 32 × $13.50 × 52 = | $22,464.00 |
|---|---|---|
| Imputed wages to full-time | 8 × $10.00 × 52 = | $ 4,160.00 |
| Value of paid health insurance | | $ 2,578.00 |
| Value of rent reduction | $300.00 × 12 = | $ 3,600.00 |
| TOTAL | | $32,802.00 |

The court calculated Bell's gross income based on the following:

| W-2 income (including health insurance) | | $29,542.00 |
|---|---|---|
| In-kind income provided by employer | | |
| House rental | $900.00 × 12 = | $10,800.00 |
| Electricity | $ 75.00 × 12 = | $ 900.00 |
| Cell phone | $ 60.00 × 12 = | $ 720.00 |
| Home phone | $ 35.00 × 12 = | $ 420.00 |
| Heating oil | 550 gallons @ $2.25/gallon = | $ 1,238.00 |
| Vehicle use/maintenance/registration and fuel | 10,000 miles @ $ .445/mile = | $ 4,450.00 |
| Insurance on home contents and vehicle | | $ 446.00 |
| TOTAL | | $48,516.00 |

[¶ 10] Using the calculations on the child support worksheet, the court ordered that Bell pay Carolan $28.46 per week for child support. The court also ordered Bell to maintain health insurance for their son. This appeal followed. Bell did not file a cross-appeal.

## II. LEGAL ANALYSIS

[¶ 11] This case requires us to consider the limits of a court's discretion to impute income to establish annual gross income for child support calculation purposes pursuant to 19–A M.R.S. § 2001(5) (2006). When calculating gross income for child support purposes, the court may consider income from any "ongoing source." 19–A M.R.S. § 2001(5)(A). The law authorizes the court to impute additional income in certain circumstances, such as when a parent is voluntarily unemployed or underemployed, 19–A M.R.S. § 2001(5)(D), or when the parent, as an employee, receives in-kind payments or services, in lieu of wages, in the course of his or her employment, 19–A M.R.S. § 2001(5)(B).

[¶ 12] We review child support orders for abuse of discretion. *Sylvester v. Vitagliano*, 2002 ME 141, ¶ 10, 804 A.2d 391, 394. However, we review the District Court's factual findings to determine whether they are clearly erroneous. *Williams v. St. Pierre*, 2006 ME 10, ¶ 8, 889 A.2d 1011, 1013. Findings are clearly erroneous if "there is no competent evidence in the record to support [them]." *Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793, 795 (quotation marks omitted).

### A. Income Imputed for Value of Rent Reduction

[¶ 13] We have held that income from an "ongoing source" includes money

---

4. Bell asserted that because Carolan did not provide evidence of how much her employer pays for her health insurance, the court should apply $214.85 per month, which is the amount that Bell's employer pays for single employees.

received from educational grants for living expenses, *see Rich v. Narofsky,* 624 A.2d 937, 939 (Me.1993); lump sum severance pay, *Walker v. Walker,* 2005 ME 21, ¶ 15, 868 A.2d 887, 890; and per diem stipends, *Macomber v. Macomber,* 2003 ME 1, ¶ 7, 814 A.2d 456, 457–58.[5] However, gross income does not include money received as a gift, where the donor has no legal obligation to continue "ongoing" payment. *See True v. True,* 615 A.2d 252, 253 (Me. 1992) (rejecting the argument that the court should have included the value of monthly checks sent by the party's grandmother in the gross income calculation).

▇ [¶ 14] Here, the difference between the rent Carolan paid and the rent paid by the previous tenant cannot be considered income from an ongoing source pursuant to 19–A M.R.S. § 2001(5)(A). Although her monthly rent may be $300 less than the previous tenant's, the $1000 rent is hardly an insubstantial sum. There is no evidence in the record that Carolan's rent payments are significantly less than prevailing rental rates for similar properties in the area. Even if the record included evidence of a significant variance between actual rent paid and prevailing rates in the area, the court would be engaging in considerable speculation if it were to impute income, or loss of income, based on a finding that a particular rent payment was significantly more, or less, than the prevailing, or "economic," rental rate that should be assessed for a particular unit. Further, there is no evidence in the record

that Carolan's parents have a legal obligation to continue the $1000 per month rental rate.[6] The court erred by imputing the value of the difference between Carolan's rent and the rent of the previous tenant in Carolan's gross income calculation.

**B. Income Imputed for Value of Health Insurance**

[¶ 15] Gross income includes "income from an ongoing source, including, but not limited to ... expense reimbursements or in-kind payments received by a party in the course of employment or self-employment or operation of a business if the expense reimbursements or in-kind payments reduce personal living expenses." 19–A M.R.S. § 2001(5)(A)-(B); *see also Knowles v. Knowles,* 588 A.2d 315, 318 (Me.1991). In the present case, subsection (5)(B) provided the authority for the court to include the value of Bell's rent-free housing, use of vehicles, and other payments for his living expenses in calculating his gross income, because the value of these items was received by Bell in lieu of wages in the course of his employment and reduced his personal living expenses. Here, we need not address, as a general matter, whether a court may include the amount an employer contributes to an employee's health insurance plan when calculating gross income.

▇ [¶ 16] Carolan's testimony that she receives employer-paid health insurance in lieu of a wage increase supports the

**5.** Pursuant to 19–A M.R.S. § 2001(5)(A) (2006), income also includes, but is not limited to,

salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust funds, annuities, capital gains, social security benefits, disability insurance benefits, prizes, workers' compensation benefits, spousal support actually received pursuant to a preexisting order from a spouse who is not the parent of the child

for whom support is being determined, and education grants, fellowships or subsidies that are available for personal living expenses.

**6.** Also, the value of Carolan's rent could not be considered an "expense reimbursement[s] or in-kind payment[s]" that reduces personal living expenses pursuant to 19–A M.R.S. § 2001(5)(B) because the rental rate was not received in the course of her employment.

court's conclusion that the health insurance payments are "in-kind benefits" subject to imputation to gross income pursuant to section 2001(5)(B). This result provides similar treatment for Carolan's and Bell's employer-paid health benefits. Thus, the court did not err in its treatment of employer-paid health benefits to impute income to each party pursuant to subsection (5)(B).

[¶ 17] While there was no evidence of the actual amount of Carolan's employer's health insurance payments, the court did not err in finding that the value of Carolan's health insurance benefits was $2578. The court arrived at this amount by multiplying Bell's employer's monthly rate for single employees, $214.85, by twelve. Using this amount to infer the value of Carolan's employer's payments was reasonable and not an abuse of discretion.

## C. Income Imputed for Eight Additional Hours of Work

[¶ 18] Pursuant to the Child Support Guidelines, income may be imputed when a person is found to be underemployed, subject to conditions specified in section 2001(5)(D). Paragraph D states in pertinent part: "Gross income may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity."

[¶ 19] The determination of whether a party is voluntarily underemployed is a question of fact that we review for clear error. *Cf. Wrenn v. Lewis*, 2003

ME 29, ¶ 17, 818 A.2d 1005, 1010. If a parent is voluntarily underemployed, the court's decision to impute income or apply the parent's earning capacity, rather than his or her current income, is discretionary. *See Koszegi v. Erickson*, 2004 ME 113, ¶ 14, 855 A.2d 1168, 1171; *Dep't of Human Servs. v. Frye*, 2000 ME 128, ¶ 11, 754 A.2d 1000, 1002–03.

[¶ 20] In this record, there is no dispute that Carolan's job is what would be considered full-time employment with benefits. Her employment as a dental assistant properly utilizes her education and experience. She works thirty-three to thirty-five hours per week, and works virtually all of the hours that are available from her employer. Her employer's office is closed on Fridays. Like many other employees in today's economy, she does not work a full forty-hour week. However, a person who works such a schedule is not thereby "underemployed" as a matter of fact or law for purposes of section 2001(5)(D). A parent who has a full-time job consistent with the parent's education and experience, but who works less than a forty-hour week, is not, thereby subject to having his or her income recalculated to a forty-hour per week equivalent for child support calculation purposes.

[¶ 21] Carolan's employment, although a few hours less than a forty-hour week, is consistent with her training and experience, and utilizes all available hours provided by her employer. The finding of voluntary underemployment was a clear error. Therefore, the court abused its discretion by imputing an additional eight hours of income to Carolan when calculating her gross income.[7]

---

7. In contrast, a finding that a parent is voluntarily underemployed is appropriate when, for example, the parent chooses a career or education path that does not take into account the interests of the children he or she is required to support, *Wrenn v. Lewis*, 2003 ME 29, ¶ 17, 818 A.2d 1005, 1010; when the parent is capable of working at least part-time, *Rich v. Narofsky*, 624 A.2d 937, 939 (Me.1993); or when the parent, who is still at a young age, chooses to retire despite having no apparent limitation on working capacity,

The entry is:

Judgment vacated. Remanded for re-calculation of child support consistent with this opinion.

LEVY, J., dissenting.

[¶ 22] I respectfully dissent because the trial court's findings regarding Carolan's imputed income were supported by competent evidence in the record and were not clearly erroneous.

A. Income Imputed for Value of Rent Reduction

[¶ 23] Carolan testified that her parents charged the previous tenant of her house $1300 per month, but that they charge her $1000 per month. When asked whether she was "doing certain things for them to get the rent reduction," she testified that she was "doing lots of yard work" and was "in the process of painting some of the rooms." Carolan also testified that she and her parents never discussed the $300 as a rent reduction, and that it was her own choice to perform services for the home because she intended to buy the home. However, when she was asked, "Well, they reduced the rent by three hundred dollars for you, correct?" she responded, "They charge me a thousand dollars a month. Yes."

[¶ 24] The trial court's decision to treat the rent reduction as imputed income was not, as the Court suggests, based on mere speculation about prevailing rental rates, but was instead based on Carolan's testimony that indicated that the rent reduction may be in exchange for her services. The trial court had the opportunity to observe Carolan and judge her credibility, and it reasonably could have inferred from her testimony that she received the rent reduction as part of a tacit agreement to provide home services. *See Jenkins, Inc.*

*Koszegi v. Erickson,* 2004 ME 113, ¶¶ 13–14,

*v. Walsh Bros., Inc.,* 2002 ME 168, ¶ 7, 810 A.2d 929, 933 ("The meaning and weight to be given the exhibits and the testimony of the witnesses is for the fact-finder to determine and must be upheld unless clearly erroneous."); *Sturtevant v. Town of Winthrop,* 1999 ME 84, ¶ 9, 732 A.2d 264, 267 ("[T]he function of an appellate court is not to review a cold transcript and draw its own factual inferences") (quotation marks omitted). The trial court did not commit clear error in treating the $300 rent reduction as imputed income.

B. Income Imputed for Value of Health Insurance

[¶ 25] I agree with the Court's conclusion that the trial court did not err in imputing the value of Carolan's employer-provided health insurance to her as income because it is an "in-kind payment[ ] received by a party in the course of employment ... [that] reduce[s] personal living expenses." 19–A M.R.S. § 2001(5)(B) (2006). I write separately on this point to note that there is no requirement that a party prove that, in the absence of the health insurance, the employer would have paid the employee compensation in an amount equal to the value of the benefit provided. We should conclude simply that where, as here, an employee receives employer-paid health insurance as a benefit of employment that reduces personal living expenses, a court has the discretion to consider the value of the same when determining that employee's gross income for purposes of section 2001(5)(B).

C. Income Imputed for Additional Hours of Work

[¶ 26] Carolan testified that she does not work Fridays because her employer does not have hours on Fridays and she chooses not to work so that she can take her son to

855 A.2d 1168, 1171.

and from school in Auburn: "I want to spend time with my son. And the time that I'm allotted to spend with him is Thursday evening, Friday, Saturday and Sunday. So I will not get another job while I have my son." She also appeared to concede the possibility that she could "find employment [on Fridays] between eight-thirty and three o'clock in Auburn."

[¶ 27] Based on the majority's review of the written trial record, it concludes that Carolan's decision to not work on Fridays is reasonable, and that it is not unjust to use her existing earnings to calculate the amount of child support Bell should pay. As an appellate court, we do not review "cold transcript[s]," *Sturtevant,* 1999 ME 84, ¶ 9, 732 A.2d at 267, and superimpose our collective assessment of the weight to be given to the witnesses' testimony and the exhibits, and the meaning to be drawn from the evidence as a whole. The majority's approach begs the question of whether the trial court committed clear error when it determined that Carolan was underemployed. Carolan's own testimony establishes that she need only work an additional four to eight hours per week to achieve a forty-hour work week, and it is reasonably possible for her to do so on Fridays, albeit with an employer other than her current employer.[8] Because there was competent evidence from which the trial court could infer that Carolan could readily work additional hours without substantially disrupting her and her son's existing schedules, the court did not commit clear error.

[¶ 28] Our standard of appellate review requires that we uphold factual findings if there is any competent evidence in the record to support them. *See Wrenn v.*

*Lewis,* 2003 ME 29, ¶ 13, 818 A.2d 1005, 1009. We should affirm the judgment.

---

8. Carolan testified that, as indicated in her most recent pay stub, she was paid for approximately thirty-six hours per week. She explained that some of those hours were taken from her account of paid time off, which accumulates based on hours worked and can be used for vacation days or sick days, but which she sometimes uses to supplement her pay.