2007 ME 89

### Daniel E. BROWN Jr.

v.

### Faith M. BROWN.

Supreme Judicial Court of Maine.

Submitted On Briefs: May 17, 2007.

Decided: July 17, 2007.

---

Robert C. Granger, Esq., Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for plaintiff.

Martha J. Harris, Esq., Paine, Lynch & Harris, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, CALKINS, LEVY, SILVER, and MEAD, JJ.

LEVY, J.

[¶ 1] Faith M. Brown appeals from a divorce judgment entered in the District Court (Bangor, *Gunther, J.*) contending that the court erred in determining parental rights and responsibilities, awarding child support, awarding spousal support, dividing the parties' property and debts, declining to award attorney fees, and denying her application to proceed on appeal in forma pauperis pursuant to M.R. Civ. P. 91(f)(1). We affirm the court's determination of parental rights and responsibilities. We vacate with respect to the financial aspects of the judgment and remand for further proceedings.

## I. BACKGROUND

[¶ 2] Daniel E. Brown Jr. and Faith M. Brown were married in 1988 in Florida and moved to Maine in 1993. They bought a small house in Mariaville. Daniel and Faith have one child together, a daughter born in 2001. The parties separated in 2004, and Daniel brought a complaint for divorce in January 2005 alleging irreconcilable differences. The parties stipulated to shared parental rights and responsibilities, but disputed primary residence, visitation and contact, and all financial issues.

[¶ 3] After a one-day hearing, the court issued a divorce judgment in April 2006 that was amended in May 2006 in response to Faith's motion for further findings pursuant to M.R. Civ. P. 52(b). The judgment awarded shared parental rights and responsibilities, with the parties sharing the child's residential care in accordance with a schedule adopted by the court.

[¶ 4] The court awarded the parties' Mariaville home, which it valued at $65,000, to Faith, subject to a mortgage with an outstanding balance of $16,457 and a home equity loan with an outstanding balance of $14,095. It ordered Faith to pursue all reasonable efforts to sell the house and discharge the mortgage and home equity loans. Daniel was ordered to maintain the mortgage, home equity loan, and house insurance payments through July 2006, after which Faith was ordered to pay those expenses and hold Daniel harmless. The court also ordered Daniel to pay the outstanding real estate taxes on the property.

[¶ 5] In regard to the value of the home, the court found that "[a]t the time of hearing, a buyer had been exploring the purchase of the house for $65,000. That sale would not involve broker's costs." The court estimated that the equity in the house was in the range of $30,000–$35,000, and it adopted $30,000 as the approximate amount that could be expected from the sale of the home after the payment of the mortgage loan and home equity loan. The judgment then accounted for and awarded the anticipated $30,000 in proceeds so that $20,000 would pay for Faith's medical, legal, and other debts, and the remaining

$10,000 would serve as a lump sum spousal support award to Faith. The court noted that the lump sum spousal support contained both "reimbursement and transitional components."

[¶ 6] The court distributed the rest of the marital estate by awarding the parties the personal property in their individual possession and ordering the parties to pay the debts and bills in their own names. The court ordered Daniel to pay nearly all the marital debt, and awarded him various items of personal property including his truck, which it valued at $6000.

[¶ 7] The court determined that the parties provide substantially equal care of their daughter pursuant to 19–A M.R.S. § 2001(8–A) (2006), and the judgment awarded Faith $52 per week in child support.[1] The child support was based on the court's imputation to Daniel of income in the amount of $25,000 per year, and imputation to Faith of income in the amount of $15,000 per year.[2] However, the court also found that Faith would not be able to obtain employment until she has the means to get a vehicle to travel to and from work,[3] which would not occur until the marital home was sold as ordered by the court. The court found that "sale [of the house] was anticipated within a 90 day period, since a potential buyer was already identified."

[¶ 8] The court also awarded Faith $31 per week as transitional spousal support through July 16, 2006, by which point the court estimated the home would be sold, which award supplemented the requirement that Daniel also pay the mortgage, home equity loan, and insurance through July. The order provided that the spousal support was subject to modification within eight years to add general spousal support if Daniel's financial circumstances change significantly. The court declined to award attorney fees to Faith.

[¶ 9] Faith filed this appeal. She subsequently filed a motion pursuant to M.R. Civ. P. 91(f)(1) to proceed on appeal in forma pauperis and for State payment of transcript preparation costs, which the court denied based on her ownership of the house the divorce judgment had awarded to her.

## II.  DISCUSSION

[¶ 10] To address Faith's challenges to all of the financial aspects of the divorce judgment, we address three of the court's factual findings that are critical to its child support, spousal support, marital property,

1. Pursuant to the substantially equal care supplemental child support worksheet, the court calculated that Daniel is required to pay $45.76 to Faith in child support. It then included an upward deviation of $6.24 because it found that Daniel has reduced living expenses resulting from the fact that he lives rent-free with his girlfriend.

2. At the time of the divorce hearing, Faith was on public assistance. She had been fired from her previous job at Wal–Mart for missing too much work when her daughter was sick. The court arrived at Faith's imputed income by stating that it was using Faith's income when she was employed by Wal–Mart.

3. The court found that Faith had no reasonable transportation, and this finding is not challenged on appeal. Faith testified that her Ford Explorer was no longer a safe vehicle to drive, and that it could not pass inspection without spending large amounts of money for those repairs. However, Faith also testified that she used a van given to her by a friend who did not expect her to pay for the van. Faith provided no other testimony regarding her difficulties with transportation. There was testimony from other witnesses that Faith is able to provide transportation for the daughter's visits with Daniel and twice a week to the Bangor YMCA. On remand, the court should consider the availability of the van as it relates to Faith's ability to obtain employment.

in forma pauperis, and attorney fee determinations: (A) Daniel's imputed income; (B) Faith's imputed income; and (C) that the Mariaville home could be sold within a ninety-day period and without a broker. We find no merit in, and do not separately address, Faith's contention that the court abused its discretion in allocating parental rights and responsibilities. *See Grenier v. Grenier,* 2006 ME 99, ¶ 20, 904 A.2d 403, 408.

## A. Daniel's Imputed Income

▪ [¶ 11] Faith contends that the court abused its discretion and committed clear error in imputing income to Daniel in the amount of $25,000 per year.[4] We review factual findings regarding a party's income for clear error. *Carolan v. Bell,* 2007 ME 39, ¶ 12, 916 A.2d 945, 948.

▪ [¶ 12] Daniel testified that at the time of the divorce hearing, he was earning $11.25 an hour and working twenty-five hours per week and that his income potential was $30,000–$32,000, but that he was not presently making that amount. He also testified that the last year that he and Faith were together, he made over $50,000 because he frequently worked double and triple shifts so that Faith could stay home with their daughter. The court found that Daniel's departure from that job did not result in voluntary underemployment because the hours of work and travel were difficult, and interfered with a reasonable family life. The court arrived at Daniel's imputed income by finding that Daniel was voluntarily underemployed by working twenty-five hours per week and assuming that he could work forty hours per week at $12 per hour for fifty-two weeks per year, and rounding up.

[¶ 13] The court's finding that Daniel's imputed income was $12 an hour was not clearly erroneous because the rate was comparable with Daniel's skill set and work history. Because Daniel was employed only twenty-five hours a week at the time of the divorce hearing and had the ability to work more hours, the court did not commit clear error in finding that Daniel was voluntarily underemployed, and could work up to forty hours per week. Contrary to Faith's contention that Daniel's imputed income should be at least $50,000 based on his previous employment, the court acted within its discretion in considering Daniel's testimony that to earn $50,000 he had to work frequent double and triple shifts that interfered with his ability to spend reasonable time with his daughter. The court did not err in imputing Daniel's income at $12 an hour for a forty-hour work week.

## B. Faith's Imputed Income

▪ [¶ 14] Faith contends that the court abused its discretion by imputing $15,000 in income to her effective as of the date of the divorce judgment. Pursuant to 19–A M.R.S. § 2001(5)(D) (2006), a court may impute income when a party voluntarily becomes or remains unemployed or underemployed. Contrary to Faith's contentions, the court did not commit clear error in finding that once Faith obtained reasonable transportation, income could be imputed to her at $15,000. *See Carolan,* 2007 ME 39, ¶ 12, 916 A.2d at 948. Faith worked throughout the marriage, except for two years when their daughter was first born, and there was evidence in the record that she earned as much as $10.85 an hour when working at Wal–Mart.

---

**4.** We find no merit in Faith's contentions that the court committed clear error in its finding that the parties provide substantially equal care pursuant to 19–A M.R.S. § 2001(8–A) (2006). *See Jabar v. Jabar,* 2006 ME 74, ¶ 17, 899 A.2d 796, 800.

■ [¶ 15] However, the court found that Faith would not be able to work until she obtained transportation, which would require the sale of the house. Incongruously, as ultimately amended, the judgment imputes income to Faith effective immediately. Because the court found that Faith would not be able to work until she obtained transportation, her imputed income should not have been deemed available to her prior to when she could reasonably be expected to obtain transportation. Accordingly, the court's finding that Faith's imputed income of $15,000 was available to her upon the entry of the divorce judgment was clearly erroneous.

C. The Finding That the Home Could be Sold Within a Ninety–Day Period and Without a Broker

■ [¶ 16] Faith contends that the court committed clear error when it found that the marital residence could be sold within ninety days of the date of the divorce judgment, and that this error prejudiced her. We review a court's factual findings regarding spousal support, child support, and the valuation and distribution of marital property for clear error. *Pillsbury v. Pillsbury*, 2007 ME 46, ¶ 4, 918 A.2d 1210, 1211; *Williams v. St. Pierre*, 2006 ME 10, ¶ 8, 889 A.2d 1011, 1013; *Murphy v. Murphy*, 2003 ME 17, ¶ 19, 816 A.2d 814, 820.

■ [¶ 17] The court ordered Daniel to pay transitional spousal support of $31 per week through July 16, 2006. It also ordered Daniel to pay the home mortgage, home equity loan, and insurance through July 2006. The court's rationale for providing no more than three months of transitional support was its finding that the sale of the marital home "was anticipated within a 90 day period, since a potential buyer was already identified." The court also found that once the home is sold, there will be sufficient net proceeds for Faith to receive an approximately $10,000 lump sum spousal support award.

[¶ 18] The only evidence regarding the value of the marital home and when it might be sold was Daniel's testimony that two neighbors had previously expressed interest in purchasing the home for $65,000. In testifying about his opinion as to the value of the home, Daniel stated that "I don't have a realtor quote or anything, but I spoke to two of our neighbors in the area at the time that offered to buy it for sixty-five thousand dollars." Daniel's testimony did not address when the offer was made, whether the offer was conditional in any respect, and whether the offer remained current. Accordingly, there is no record support for the proposition that the neighbors remain able and willing to purchase the home within ninety days of the divorce judgment. The court's finding that the home would sell within ninety days and without the assistance of a real estate broker is clear error.

[¶ 19] Until the home is sold, the judgment anticipates that Faith's income will consist of public assistance, food stamps, child support in the amount of $52 per week, transitional spousal support in the amount of $31 per week for a period of no more than ninety days, and transitional support in the form of Daniel's payment of the house related expenses for no more than three months. In addition, the court's division of the proceeds from the sale of the home and its award of $10,000 in lump sum spousal support were predicated on the court's finding that the house would be sold to the neighbors within ninety days without a broker. Absent evidence in the record that the home could reasonably be expected to be sold by the end of July 2006, we conclude that the court abused its discretion by terminating the transitional spousal support in July 2006.

[¶ 20] In addition, the denial of Faith's motion to proceed in forma pauperis was also premised on the clearly erroneous finding regarding the sale of the home, and the court abused its discretion in denying Faith's motion for State payment of the appeal filing fee. *See* M.R. Civ. P. 91(f)(1). In regard to the court's denial of the request for payment of paper transcript preparation, there was no error because the rules do not authorize the preparation of a paper transcript in a divorce hearing at State expense. *See* M.R. Civ. P. 91(f)(2).

[¶ 21] Because the findings that we have determined to be clearly erroneous were central to the court's determination of the property distribution, assignment of debt, child support, spousal support, denial of payment of the appeal filing fee, and attorney fees,[5] we vacate these aspects of the judgment.

The entry is:

Judgment affirmed as to irreconcilable differences, parental rights and responsibilities, and denial of motion for State payment of paper transcript. Judgment vacated in all other respects and the case is remanded for further proceedings consistent with this opinion. Because of the passage of time, the parties should be permitted to introduce additional evidence regarding their financial circumstances.

---

5. In view of the court's observation that Faith's attorney fees were "quite high given the modest marital estate," the court should consider the reasonableness of the fees requested when it reconsiders Faith's request. *See Urquhart v. Urquhart,* 2004 ME 103, ¶ 6, 854 A.2d 193, 195; *see also* 19–A M.R.S. §§ 105(1), 952(1)(d) (2006); M.R. Civ. P. 80(d).