2011 ME 117

**Habibo SHEIKH**

v.

**Haji HAJI.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 27, 2011.

Decided: Nov. 29, 2011.

L. Chris L'Hommedieu, Esq., Lewiston, for appellant Haji Haji.

Meghan Higgins, Stud. Atty., Thomas Carnes, Stud. Atty., and E. James Burke, Esq., Supervising Atty., Cumberland Legal Aid Clinic, Portland, for appellee Habibo Sheikh.

William J. Schneider, Attorney General, and Carlos Diaz, Asst. Atty. Gen., Office of Attorney General, Portland, for appellee Department of Health and Human Services.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

JABAR, J.

[¶ 1] Haji Haji appeals from a judgment of parental rights and responsibilities entered in District Court (Lewiston, *Lawrence, J.*). Haji contends that the court erred in awarding Habibo Sheikh primary residence and final decision-making authority for their three minor children and erred in imputing income to him for the purpose of establishing a weekly child support order. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Both Habibo Sheikh and Haji Haji were born in Somalia and immigrated to the United States in 2004 and 2005, respectively. They participated in a marriage ceremony performed by an Imam, according to Muslim tradition, in Hartford, Connecticut in August 2005. Habibo and Haji are the parents of three minor children.

[¶ 3] Habibo filed a complaint for divorce against Haji on September 11, 2009. The Court held three days of trial proceedings on September 8, 2010, January 5, 2011, and January 7, 2011. During the September 2010 trial proceeding, the court learned for the first time that although Habibo and Haji had been married according to their religious tradition in Connecticut, they had at no point obtained a legally enforceable marriage license. The parties and the court agreed that the complaint for divorce would be converted into a petition to determine parental rights and responsibilities. On the second day of trial, January 5, 2011, Haji moved without objection to include the youngest child, who had been born after Habibo had filed her September 2009 complaint for divorce, in the parental rights determination. The court issued its Judgment of Parental Rights and Responsibilities on February 3, 2011. The defendant filed a timely M.R. Civ. P. 52(b) motion for additional findings of fact and conclusions of law on February

11, 2011. The court summarily denied the motion on February 16, 2011. *See* M.R.App. P. 2(b)(3). Haji's timely appeal followed.

[¶ 4] Throughout the trial proceedings, the court faced a difficult task of navigating through language barriers and significant cultural differences among the parties and their witnesses. Habibo and her family are part of and supported by the Maay Maay-speaking segment of the Somali community, while Haji is part of and supported by the Bantu-speaking segment of the Somali community. The proceedings required the use of no fewer than three translators to interpret testimonial submissions of eleven witnesses into the two dialects for the benefit of the parties, and into English for the benefit of counsel and the court.

[¶ 5] The testimony of all the witnesses established that after their August 2005 marriage ceremony, Habibo and Haji lived together in Hartford, Connecticut for nine months until May 2006, when Habibo moved with her parents, Jabril Abdi and Khadijo Ali, to Lewiston, Maine. The couple's first child, Safiya, was born in June 2006 shortly after Habibo moved to Lewiston. Haji left his position at a manufacturing plant in Connecticut and followed Habibo to Maine approximately nine months later in February 2007. The couple initially resided with Habibo's parents at a residence on Shawmut Street in Lewiston before Haji was able to secure housing at an apartment on Knox Street.

[¶ 6] The court found that while Habibo and Haji were living together, Haji physically abused Habibo and their oldest daughter, Safiya. In December 2007, after an incident in which he allegedly kicked Habibo in the stomach while she was pregnant with the couple's second daughter, Haji was arrested, charged with assault, and prohibited from contact with Habibo

and the oldest daughter for a period of five months.[1] Although the assault charge was later dismissed, Habibo testified that the couple's oldest daughter, Safiya, had witnessed this abuse. Based on Habibo's testimony, the court also found that Haji had beaten her with an electrical cord and had assaulted Safiya on two occasions, although the dates of these incidents were unspecified.

[¶ 7] Haji maintained that while he and Habibo were living together at the Knox Street residence, he performed most, if not all, of the child rearing duties. Haji testified that Habibo was incapable of caring for the children on her own. As part of what became a pivotal inquiry in the litigation, the court found that Habibo suffered from "cognitive issues that at minimum may include a significant learning disability." This finding was corroborated by Habibo's own trial testimony, which indicated that she could not read or write in Somali or English and had significant problems understanding basic math and calculating the ages of her children. In the summer of 2006, Habibo submitted documentation to the Social Security Administration that ultimately qualified her to receive Federal Supplemental Security Income benefits on account of an "organic mental disorder."[2]

[¶ 8] In the summer of 2009, taking her two daughters with her, Habibo moved back in with her parents. Shortly before the filing of the complaint for divorce,

Habibo filed a complaint for protection from abuse (PFA) on August 12, 2009, and the court granted a consent order on August 28, 2009. According to the terms of an April 2010 amendment to the August 2009 consent order, the two daughters were to live with Habibo four days a week and with Haji three days a week.

[¶ 9] Haji and Habibo both testified at trial that they felt it was important for the other parent to have a relationship with the children. During the time of the parties' separation, following the August 2009 PFA, the parties successfully worked together, with the help of their respective support groups in the Somali community, to perform their parenting obligations under the amended consent order. By the second day of trial, on January 5, 2011, Haji and Habibo had successfully worked together to enroll Safiya in school. Haji put on evidence, largely through his own testimony and the testimony of a Bantu community elder, establishing that he was a good father and was able to consistently attend to the needs of his children. The record establishes, and the court found, that Habibo received consistent and substantial support from her family in caring for the children.

[¶ 10] The District Court's February 2011 judgment ultimately established "parallel, but not fully shared, parental rights and responsibilities." The court awarded

---

1. The court found that the kicking incident occurred when Habibo was pregnant with the couple's youngest child, Fortun. The record demonstrates that Haji allegedly assaulted Habibo when she was pregnant with the couple's younger daughter, Sadiya.

2. Fueling Haji's arguments in this appeal, Habibo and her mother, Khadijo Ali, represented in certain Social Security Administration forms that Habibo was wholly dependent on her mother and other family members to perform even the most basic of daily tasks and that she had to be "supervised" while per-

forming virtually any life activity, including the care of Safiya. At trial, Habibo testified that she was able to perform basic daily functions for herself and able to adequately care for all of her children with the assistance of friends and family. When Haji's counsel confronted Khadijo about the statements she made on behalf of Habibo in the Social Security Administration forms, Khadijo categorically denied saying anything disparaging about Habibo's ability to care for herself or the children and re-characterized Habibo's cognitive limitations more blandly as learning disabilities.

Habibo primary residential care of the children "provided she continues to reside ... in the same apartment building as her parents and siblings," and awarded her "the right to make final binding decisions" to the extent there was disagreement between her and Haji. The court ordered that Haji be kept "fully informed," in advance, as to all significant decisions involving the children and afforded the opportunity to comment. As part of recognizing the significant cultural divide among the parties, the court incorporated into its judgment a dispute resolution component that embraced the values of both the Maay Maay and Bantu segments of the Somali community. To the extent the parties remained in a deadlock on any decision regarding the children, the court ordered Habibo, before exercising final decision-making authority, to make an effort to mediate the disagreement with the assistance of both Maay Maay and Bantu community elders through Youth Alternatives Ingraham Mediation Services. The court allocated to Haji reasonable rights of contact that, at minimum, consisted of caring for the two oldest children from Monday morning through Thursday morning of every week. The court also established a schedule to incrementally increase Haji's contact with the couple's infant son.

[¶ 11] Also relevant to this appeal, the court received testimony from Haji in which he outlined his prior work history and his efforts to seek employment during the time this action was pending. Intervening on behalf of Habibo on the issue of child support, the Department of Health and Human Services (DHHS) advocated that Haji be imputed with an income capacity consistent with his employment history. Ultimately, the court found that Haji had an earning capacity of $15,600 per year—an annual salary consistent with full-time, minimum wage employment—and based on that calculation, ordered Haji to make weekly child support payments of $87, or $27 per child.

## II. DISCUSSION

[¶ 12] Haji first contends that the Court abused its discretion in awarding primary residence of the children to Habibo. The trial court is afforded "broad discretion in determining the custody of minor children" and we review the "award of parental rights and responsibilities for an abuse of discretion." *Williams v. Williams*, 1998 ME 32, ¶ 8, 706 A.2d 1038. In making an award of parental rights and responsibilities, the court is required to apply the best interest of the child standard. *Id.*; 19–A M.R.S. § 1653(3) (2010).

[¶ 13] Haji argues that the trial court abused its discretion in awarding Habibo with primary residence of the children by failing to adequately factor into its best interest analysis Habibo's cognitive limitations. Beyond the fact that the court explicitly recognized Habibo's "cognitive issues," an examination of the February 2011 judgment demonstrates that the court considered (1) the violence that Haji inflicted on Habibo and their daughter when the parties lived together, *see* 19–A M.R.S. §§ 1653(3)(L), (M); (2) the motivation and capacity of both Habibo and Haji to give their children love and affection, *see id.* § 1653(3)(F); (3) the parties' mutual agreement that it was important for all of the children to have contact with the other parent, *see id.* § 1653(3)(K); and (4) the consistent support Habibo received from her family in caring for the children, *see id.* § 1653(3)(B).

[¶ 14] The best interest analysis does not superimpose upon the trial court an obligation to "robotically address[ ] every statutory factor ... so long as it is otherwise evident that the court has evaluated the evidence with the best interest factors in mind." *Nadeau v. Nadeau*, 2008 ME 147, ¶ 35, 957 A.2d 108. That much

**1070**

was accomplished here. Faced with what the court aptly described as "self-serving and/or vague (both intentional and unintentional) testimony" from the parties themselves and their respective supporting witnesses, the task of making credibility determinations falls to the trial court in its fact-finding role. *See Handrahan v. Malenko*, 2011 ME 15, ¶ 13, 12 A.3d 79 (reiterating the rule that even where conflicting evidence might support alternative findings, a trial court's factual findings will not be considered clearly erroneous as long as they are supported by competent record evidence). The court's primary residency determination was not based upon clearly erroneous findings and the court did not otherwise abuse its discretion in awarding Habibo primary residence of the three minor children.

 [¶ 15] Nor did the trial court abuse its discretion in awarding final decision-making authority to Habibo in the event the parties disagree about significant decisions affecting the children. The same facts that support the court's primary residency determination similarly support awarding Habibo final decision-making authority. The court's finding of abuse, coupled with the finding that Habibo receives substantial support in caring for the children, is sufficient to tip the scales in her favor, and the court did not abuse its discretion by allocating final decision-making authority to Habibo. *See* Alexander, *Maine Appellate Practice* § 410 at 224 (3d. ed. 2008) ("[T]he appeals court will uphold the ruling of the trial court unless it determines ... that there is no rational basis for the trial court's ruling.").[3]

 [¶ 16] Finally, Haji challenges the court's decision to impute his earning

capacity for the purpose of establishing a weekly child support order. The trial court is vested with the discretion to impute earning capacity to a parent who "voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity." 19–A M.R.S. § 2001(5)(D) (2010); *see Koszegi v. Erickson*, 2004 ME 113, ¶ 14, 855 A.2d 1168. On appeal, the analysis is two-fold. Whether a party is voluntarily unemployed or underemployed is a question of fact reviewed for clear error. *Carolan v. Bell*, 2007 ME 39, ¶ 19, 916 A.2d 945. The trial court's decision to impute income is reviewed for an abuse of discretion. *Id.; accord Nadeau*, 2008 ME 147, ¶ 48, 957 A.2d 108. The court's February 2011 judgment provides, in relevant part:

> Defendant has resided in the United States since June of 2004. Defendant has no formal education and does not read or write in English. Before coming here, Defendant taught reading and writing in Somalia. After coming to the United States, he found employment and worked in manufacturing in Connecticut for two years earning $8.50 per hour. In Maine, Defendant worked in housekeeping at Point Sebago and in production at Worcester Wreath, earning $9.00 per hour at both jobs. Defendant currently is unemployed and does not have a driver's license.[ ] Defendant has no physical disability and continues to seek work. The court pegs Defendant's earning capacity at minimum wage or $15,600.00 annually.

[¶ 17] DHHS argues that the trial court's finding of voluntary underemploy-

---

3. The court's February 2011 judgment contains findings of fact and conclusions of law sufficient to apprise Haji "of the reasoning underlying its conclusions" and to enable this Court to provide "effective appellate review."

*Dargie v. Dargie*, 2001 ME 127, ¶ 2, 778 A.2d 353 (quotation marks omitted). The court did not abuse its discretion by summarily denying Haji's M.R. Civ. P. 52(b) motion for additional findings of fact and conclusions of law.

ment or unemployment is necessarily implicit in the court's recitation and analysis of Haji's employment history, his level of education, his access to transportation, and the absence of any disability that would prevent him from holding full time, entry-level employment. *See Wrenn v. Lewis,* 2003 ME 29, ¶ 18, 818 A.2d 1005 ("A person's earning or income potential is a product of a variety of factors, including that person's qualifications, income history, and the earning or income opportunities that are reasonably available to that person.").

[¶ 18] The evidence readily supports DHHS's argument. An implicit finding that Haji was "voluntarily underemployed or unemployed," although not stated specifically in the judgment, is additionally bolstered by competent record evidence that Haji had not held a job since his release from a seasonal position at Worcester Wreath in December 2008, that he did not search or apply for any job during the summer of 2010, that he voluntarily limited his search to job opportunities in the Lewiston–Auburn area despite a history of employment in other geographic locations in Maine requiring him to travel, and that he periodically performed custodial work for the Somali–Bantu community in exchange for housing assistance. More-over, DHHS Agent Raymond Heathco provided testimony suggesting that there were entry-level, minimum wage jobs available in the surrounding community for people with similar language barriers as Haji, who unquestionably had difficulty reading and communicating in English. In short, the predicate finding of voluntary underemployment or unemployment is implicit in the court's decision and supported by competent evidence in the record. *Carolan,* 2007 ME 39, ¶ 12, 916 A.2d 945 (quoting *Payne v. Payne,* 2006 ME 73, ¶ 7, 899 A.2d 793). Considering the court's acknowledgement of Haji's limited efforts to find employment, the decision to impute income based on his earning capacity does not reflect an abuse of the court's discretion.

[¶ 19] Having calculated the weekly child support payment by applying the self-support reserve to the imputed earning capacity, the court also properly accounted for Haji's subsistence needs as the non-primary care provider. *See Johnson v. Smith,* 1999 ME 168, ¶ 7, 740 A.2d 579.

The entry is:

Judgment affirmed.