MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2014 ME 112
Docket:        Kno-13-251
Argued:        April 7, 2014
Decided:       September 18, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

CHRISTINE M. STARRETT

v.

IRVEN G. STARRETT

SAUFLEY, C.J.

[¶1]  Christine M. Starrett appeals from a divorce judgment entered in the District Court (Rockland, *Worth, J.*) and from an order granting in part and denying in part her post-judgment motion for additional or amended findings of fact and conclusions of law and to amend the divorce judgment.  Christine's primary contention is that the court erred or abused its discretion in its valuation of the parties' privately owned business, Irv's Drywall.  Christine also challenges the court's estimate of each party's income and its decision related to the sale of the parties' marital real estate.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts are drawn from the trial court's findings and from the record.  Irven and Christine were married on December 6, 1980.  They are both in their fifties.  They have two children who are now adults and are not the subject

of any dispute. The court found that the parties are "intelligent, hard-working individuals with many skills [who] have contributed equally to the acquisition of assets and debts." After nearly thirty years of marriage, they separated in May 2010, and Christine filed a complaint for divorce in June 2010.

[¶3] The parties had a difficult separation. Christine obtained a protection from abuse order against Irven, and she was served with a protection from harassment notice or order. Nonetheless, the parties, with the assistance of counsel, made efforts in advance of trial to resolve many of their disputes. Before the trial in November 2012, they agreed to sell some of their personal and real property, both marital and nonmarital, and to divide the proceeds. Additionally, from the time of their separation in May 2010 until March 2012, Irven paid Christine support ranging from $400 to $1,000 per week, totaling $93,000 by the time of trial.

[¶4] A significant portion of the remaining dispute centered on the value of Irv's Drywall, a closely held corporation owned by the parties that Irven started and has operated since 1990 or 1991. Throughout their marriage, both Irven and Christine derived personal benefit from Irv's Drywall, including payments for gasoline and cell phone bills for themselves and their children, use of the business's supplies and equipment, and use of employees' labor on their property. At its peak, during 2007 and 2008, the company was quite successful, employing

thirty to forty employees and subcontractors, and recording gross annual receipts of over $2 million in each of those years. By the time of trial, Irv's Drywall, affected like many businesses by the economic downturn, had reduced its staff to approximately sixteen employees and showed average annual gross receipts of just over $1.6 million from 2010 to 2012. The court determined that "[t]he evidence does not support optimism now that the corporation business will return to its pre-downturn profitability."

[¶5] In preparation for trial, the parties jointly hired an expert to calculate the value of Irv's Drywall. The expert testified at trial that, as of March 31, 2012, the fair market value of the company was approximately $392,000 based on the capitalization-of-earnings method. Both parties disagreed with the expert's opinion. Christine testified that Irv's Drywall was worth at least $450,000, and Irven testified that he would sell it if offered $200,000.

[¶6] The court entered a divorce judgment on February 28, 2013. It rejected the expert's opinion, finding that "his testimony on the value of an owner-operated small sheetrock corporation in rural Maine was sufficiently qualified that the [c]ourt does not rely on it for value proof here." The court also rejected Christine's estimate of $450,000 because it "appeared to be strategic rather than supported by the evidence." Noting the company's large amount of debt, the court found that "[t]he persuasive evidence does not support a conclusion that, in this economy, the

4

business has sale value or fair market value." The court then undertook an abbreviated liquidity assessment and found that the company's "business debt appears, thus, to be equal to or more than the value of business assets including accounts receivable and equipment as of the date of the expert's report." Ultimately, the court found, "the evidence shows that the value of Irv's Drywall, Inc., is Defendant's continued ability and willingness to work as he has." It awarded Irven all of the parties' interest in the business, including its assets and real property, and made Irven solely responsible for the company's debt.

[¶7] The divorce judgment also ordered the sale of the parties' marital residence and camp, with any proceeds and debts equally divided between the parties. Irven was ordered to pay the mortgages on both properties, totaling over $5,000 monthly,[1] until they are sold. The court also granted to Irven the sole authority to choose the listing realtor for both properties and ordered that, in the event that the parties could not agree on the listing and sale prices, Irven and the listing broker were to determine the prices based upon prevailing market conditions.

[¶8] With regard to the parties' incomes, the court did not find credible Christine's testimony that she was completely disabled and therefore unable to

---

[1] The parties' mortgage payments include $3,300 per month for their marital home and $1,900 per month for their camp.

work. It found instead that, notwithstanding her short-term disability, Christine would be able to "regain her equilibrium" once the trauma of the divorce has passed and that she is capable of earning $50,000 annually. The court found that Irven is capable of continuing to operate Irv's Drywall, through which he can earn $93,000 annually. It awarded Christine general spousal support in the amount of $1,000 per month until the sale of the residence, and $2,000 per month thereafter until the death of either party or until Christine's remarriage or cohabitation that is equivalent to marriage. It declined to award transitional support because Christine had already received substantial amounts during the separation.

[¶9]  Christine moved for findings of fact and conclusions of law, and to amend the judgment. *See* M.R. Civ. P. 52(b), 59(e). The court denied the motion except to clarify that its independent valuation of Irv's Drywall took into account the business's assets and accounts receivable as identified by the expert. Christine timely appealed.

## II.  DISCUSSION

[¶10]  Because a review of the record demonstrates that the court's factual determinations regarding the parties' earning capacities are fully supported by competent evidence, we do not disturb those findings. *See Bond v. Bond*, 2011 ME 54, ¶¶ 10, 15, 17 A.3d 1219. We further conclude that the court did not abuse its discretion in granting to Irven the authority to facilitate the sale of the marital real

6

estate. *See St. Hilaire v. St. Hilaire,* 526 A.2d 28, 29 (Me. 1987); *see also* Levy*, Maine Family Law* § 7.7[1] at 7-52 (8th ed. 2013). We address here only the court's factual findings and exercise of discretion in its valuation and distribution of Irv's Drywall.

A.    Valuation of Irv's Drywall

[¶11]   There is no dispute that Irv's Drywall, which was founded and incorporated after the parties were married, is marital property. *See* 19-A M.R.S. § 953(2) (2013) (defining "marital property," except for certain exceptions not applicable here, as "all property acquired by either spouse subsequent to the marriage"). Rather, the dispute centers on the value of that marital asset. Valuing a closely held corporation for purposes of property division in a divorce proceeding when there is no actual intent to sell the business is, at best, a difficult task. Nonetheless, as with any factual finding, we review the court's determination of an asset's value for clear error. *Bond*, 2011 ME 54, ¶ 10, 17 A.3d 1219 (citing *Wandishin v. Wandishin*, 2009 ME 73, ¶ 12, 976 A.2d 949). A trial court's factual finding is not clearly erroneous if there is any competent evidence in the record to support it. *See Bond*, 2011 ME 54, ¶ 15, 17 A.3d 1219. We review the court's overall distribution of property for an abuse of discretion. *Id.* ¶¶ 10, 15.

[¶12]   As with all other testimony or evidence, the court was authorized, indeed required, to evaluate the credibility of the evidence offered on the value of

Irv's Drywall. *See Wandishin*, 2009 ME 73, ¶ 13, 976 A.2d 949. Accordingly, it could reject the expert witness's opinion that the business had a fair market value of $392,000. Similarly, the court acted well within its authority in rejecting Christine's estimate of the company's value at $450,000. *See id.* The court was also free to reach a differing valuation based on its independent review of the evidence, as long as that determination was supported by competent evidence in the record. *See id.*; *see also* Levy, *Maine Family Law* § 7.8[1] at 7-65.

[¶13] The court's conclusion that Irv's Drywall had no "sale value or fair market value" is supported by the record. Indeed, the business appraiser struggled to find a way to value the company and acknowledged that his appraisal was for purposes of the divorce, not necessarily for purposes of a sale of the company. The record contains ample evidence from which the court could determine that this relatively small business, which had taken a hit in the economic downturn, owed its existence to Irven's ability and willingness to continue the work; that it was not likely at that time to garner nearly $400,000 in an arm's-length sale; and that the business's highest value to the parties is its continued ability to generate an income of $93,000 each year for Irven, through which he can continue to pay spousal support to Christine.

[¶14] The court's findings went astray, however, when the court determined on its own, through the use of an abbreviated liquidation calculation, that the

8

company's debts exceeded its assets. The court explicitly noted that it drew the facts for that analysis from the appraiser's report. However, a review of the business assets and debts described in the expert report shows that a basic liquidation calculation would result in a net positive value of over $47,000:

| Irv's Drywall Assets as of 3/31/2012 | | Irv's Drywall Debts as of 3/31/2012 | |
|---|---|---|---|
| Real estate value (current)[2] | $265,000 | Mortgage (current)[3] | $173,966 |
| Cash | 42,417 | Lien from other sale | 10,000 |
| Equipment[4] | Not available | Accounts payable to supplier | 123,630 |
| Accounts receivable | 49,889 | Customer deposits | 2,000 |
| Inventory | 5,000 | Line of credit with Camden National Bank | 33,860 |
| Prepaid assets | 14,606 | Debt owed to Ally Bank | 1,517 |
| Stockholder advances | 15,100 | | |
| | | | |
| Total assets | $392,012 | Total debts | $344,973 |
| Net Value: $47,039 | | | |

[¶15]   Thus, the court's brief liquidation analysis reflects factual error because the business still had, at that time, a small but not insubstantial positive liquidation value.

---

[2]  The value of Irv's Drywall's premises was not separated from the expert's calculation of the business's fair market value of invested capital. We therefore use the fair market value found by the court after trial: $265,000.

[3]  The expert report stated that the amount owed on the mortgage was $177,137 as of March 31, 2012. Because we use the fair market value of the Irv's Drywall premises as of the end of the trial as determined by the court, we use the amount due on the mortgage at the same time: $173,966.

[4]  The expert report did not separately estimate the value of Irv's Drywall's equipment. Any positive value of the equipment would further increase the liquidation value of the business.

B.      Harmless Error Analysis

[¶16]    The question before us is whether that factual error affected Christine's substantial rights in the ultimate division of the marital property.  A trial court finding, even if in error, does not require us to vacate the judgment if the error did not result in substantial injustice or affect substantial rights.  M.R. Civ. P. 61; M.R. Evid. 103(a).  To obtain relief on appeal, a party claiming error must demonstrate prejudice resulting from the error.  *In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240; *see* Field & Murray, *Maine Evidence* § 103.5 at 18 (6th ed. 2007).

[¶17]  There is no indication that Christine suffered substantial injustice or was prejudiced by the court's award of Irv's Drywall in its entirety to Irven.  Although the liquidation value of the business was a positive, rather than a negative, value at the time of the divorce hearing, it was a relatively small value.  Further, as noted above, on this record, we discern no error in the court's finding that there is no realistic market value for this closely held business, or in its finding that the best value of Irv's Drywall is its ability to generate a substantial income for Irven, which will allow him to pay the significant amount of spousal support that the court ordered.  Should Irv's Drywall rebound more thoroughly than the court expected, it will provide Irven with sufficient resources to address any substantial change in Christine's need for spousal support.  Thus, although the court erred in

10

finding that the company had no positive liquidation value, that error had little effect on the property distribution to both parties.

[¶18]  Accordingly, the court did not abuse its discretion in determining that the business's payment of Irven's salary constitutes its primary source of value to both parties and therefore awarding the business to Irven.  Any cash that Christine might have received from a share of the liquidation proceeds of Irv's Drywall was more than offset by the court's order that Irven pay the parties' entire mortgages totaling over $5,000 per month and spousal support of $1,000 per month— payments that, when annualized, constitute nearly 80% of Irven's pretax wages. Once the parties' real properties are sold, Christine's spousal support will increase to $2,000 per month, which is over 25% of Irven's pretax wages.

[¶19]  Because the court's small factual error in the calculation of the liquidation value of Irv's Drywall did not affect Christine's substantial rights or otherwise prejudice her, we affirm the judgment.  We are not persuaded by and do not separately address Christine's other contentions.

The entry is:

Judgment affirmed.

**On the briefs:**

David M. Lipman, Esq., and James T. Lawley, Esq., Lipman & Katz, P.A., Augusta, for appellant Christine M. Starrett

Steven C. Peterson, Esq., West Rockport, for appellee Irven G. Starrett

**At oral argument:**

David M. Lipman, Esq., for appellant Christine M. Starrett

Steven C. Peterson, Esq., for appellee Irven G. Starrett

Rockland District Court docket number FM-2010-163
FOR CLERK REFERENCE ONLY