MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 60
Docket:      Kno-16-460
Argued:      March 3, 2017
Decided:     April 4, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

EDWARD J. HARSHMAN

v.

SHEILA C. HARSHMAN

GORMAN, J.

[¶1]  Edward J. Harshman appeals from a divorce judgment entered in the District Court (Rockland, *Sparaco, J.*) on his complaint against Sheila C. Harshman.  Edward challenges the court's exclusion of evidence at trial as well as its calculation of the parties' respective incomes for child support and spousal support purposes.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The court made the following findings, which are supported by competent record evidence.  Edward and Sheila were married in 2000.  They have two minor children.

[¶3]  Edward has been a licensed physician since 1999.  He has never been board-certified and has no admitting privileges to any hospitals, but has

maintained his own medical practice for most of his career. While the divorce was pending, Edward closed his medical practice, moved to Augusta, and began working as an independent contractor performing health screenings. He works two five-day weeks per month, but is physically able to work full-time as a practicing physician.

[¶4] Edward has earned between $0 and $78,375 annually through his employment as a physician. Although Edward states that he expects to earn $44,000 per year in the coming years, Department of Labor statistics estimate the average annual income for general medical practitioners in the Augusta area at $186,240. Edward was voluntarily underemployed throughout the marriage, and on a continuing basis, because "he has not needed to [work] given the substantial income that he receives from family trusts." He has long received $6,000 to $9,000 per month or more in trust distributions; Edward received more than $100,000 from the trusts in 2014 and again in 2015. Although Edward does not have a right to demand distributions, his sister is the trustee, and every time he has requested a distribution, she has provided it. Edward and the family have relied on the trust distributions throughout the marriage.

[¶5]  The court found that Edward "has been deliberately attempting to keep his income low and his expenses high during the pendency of the divorce" and has "engaged in a concerted effort to manipulate and/or mislead [Sheila] as to the resources and income available to him," and that Edward and his sister have colluded to artificially "adjust[]" the appearance of Edward's income stream to avoid spousal support.  In 2015, the year that Edward filed the divorce complaint, Edward did not request trust funds.  Edward also attempted to characterize the trust distributions as repayments on a loan he made to the trust, a representation not supported by his tax returns, financial statements, or logic.  Edward's trust income has not decreased and is unlikely to do so, but if it did decrease, Edward could earn more money through employment.  The court calculated Edward's income to be $170,000 per year.

[¶6]  With Edward's agreement, Sheila has historically provided and continues to provide full-time homeschooling for the parties' children, and therefore remains unavailable to work outside the home.  Sheila has no income other than the $5,700 per year generated by the rental of her nonmarital property on Nantucket.

4

[¶7] Edward instituted divorce proceedings against Sheila on June 18, 2015. *See* 19-A M.R.S. § 901 (2016). Sheila counterclaimed for divorce.

[¶8] The court conducted a hearing on the divorce on June 1, 2016, and August 5, 2016. On the first day of hearing, Edward moved for the admission of various documents relating to his family trusts. In response to Sheila's objection, the court excluded those documents from admission at trial as hearsay.

[¶9] On July 26, 2016, before the second hearing date, the court conducted a conference on Edward's request to discuss the admission of the previously-excluded trust documents, this time on the ground that he had a certification that rendered the documents self-authenticating "[c]ertified domestic records of a regularly conducted activity" pursuant to M.R. Evid. 902(11).[1] The court again excluded the documents, this time "in the interests of justice" pursuant to Rule 902(11).

---

[1] Maine Rule of Evidence 902(11) provides that

[t]he following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

. . . .

**(11) Certified domestic records of a regularly conducted activity.** The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a statute or a rule prescribed by the Maine Supreme Judicial Court. Before the trial or hearing, the proponent must give an adverse party

[¶10]   On the second day of hearing, Edward's sister appeared and testified, contrary to Edward's representations throughout the litigation that his sister would not attend the hearing.  During her testimony, Edward sought, for the third time, admission of the voluminous trust documentation.[2]  Sheila did not object to testimony about the trust, or to any trust documents that had been timely disclosed, but did object to the admission of underlying trust financial data that was requested in discovery but had never been provided.  The court excluded those late-provided portions of the trust documents as a discovery sanction.

[¶11]   By decision dated September 2, 2016, the court adopted the parties' agreement as to parental rights and contact and therefore awarded Sheila sole parental rights to the children.  In addition, the court divided the parties' assets and debts, and calculated Edward's child support and spousal support obligations.[3]  Edward appeals.

---

reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to object to the authenticity of the record or on the basis of hearsay.  In the event of an adverse party's objection to a record offered under this paragraph, the court may in the interests of justice refuse to accept the certification under this paragraph and require the party offering the record to provide appropriate foundation by other evidence.

[2] The court noted that Edward sought to introduce "four inches of documents."

[3] In addition, the court stated that Edward would be ordered to contribute toward Sheila's attorney fees and costs because Edward is better able to absorb the costs of litigation and because

## II. DISCUSSION

[¶12]  The calculation of each spouse's income is a key component in the court's consideration of child support and spousal support issues in a divorce matter.  19-A M.R.S. § 951-A(5)(E) (2016) (stating that one of the factors the court "shall consider" in awarding spousal support is "[t]he income history and income potential of each party"); 19-A M.R.S. § 2006(1) (2016) (providing that child support is calculated relative to each party's annual gross income).  Here, the court found that Edward's annual income is $170,000 and Sheila's is $5,700.  Contrary to Edward's contentions, there was ample record evidence to support both findings.  *See Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶¶ 48, 52, 956 A.2d 110 (stating that we review the court's findings of fact in its income determinations for clear error, and we will not disturb those findings if there is any competent evidence in the record to support them).

---

his actions had driven up the costs of the litigation.  *See* 19-A M.R.S. § 105 (2016); *Conlogue v. Conlogue*, 2006 ME 12, ¶ 24, 890 A.2d 691.  Because the court has not yet issued a final order fixing any amount of fees and costs, however, Edward's challenge to that portion of the court's judgment is not ripe for our review.  *See Ne. Inv. Co., Inc. v. Leisure Living Cmtys., Inc.*, 351 A.2d 845, 848 (Me. 1976).

We note that the trial court retained jurisdiction to award attorney fees notwithstanding the pending appeal.  *See* M.R. App. P. 3(b)(2); M.R. Civ. P. 54(b)(3).  The court also could have awarded costs while the appeal was pending if we had granted leave for it to do so, *see* M.R. App. P. 14(c); M.R. Civ. P. 54(d); *Flaherty v. Muther*, 2011 ME 32, ¶ 90, 17 A.3d 640, but neither party requested the leave.  Both such actions would have best served the interest of judicial economy in that they would have allowed our consideration of the entire matter, rather than creating a potentially piecemeal appeal process.

[¶13]  The court's calculation of Sheila's income is supported by the evidence of the amount she has received from the rental of her Nantucket property—an amount Edward does not dispute.  We discern no error or abuse of discretion in the court's denial of Edward's request to impute additional income to Sheila.  *See Carolan v. Bell*, 2007 ME 39, ¶ 19, 916 A.2d 945.  Sheila is the full-time teacher for the parties' homeschooled children, a role she and Edward agreed that she would fulfill.  Thus, the court reasonably declined to find that Sheila is voluntarily unemployed.  On this record, the court also appropriately refused to speculate as to what income Sheila might be able to obtain by selling her nonmarital property and investing the proceeds.  *See Warner v. Warner*, 2002 ME 156, ¶ 48, 807 A.2d 607 (stating that "spousal support awards may not be based on speculative predictions of future economic circumstances" and holding that such calculations are "unduly speculative" when "there is no evidence from which the court could determine the likely value" of property); *see also Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 27, 718 A.2d 186; *Sweeney v. Sweeney*, 534 A.2d 1290, 1291 (Me. 1987); *cf.* 19-A M.R.S. § 2007(3)(N) (2016) (allowing, but not requiring, the court to impute income to a parent based on ownership of "nonincome-producing" assets in some circumstances).

[¶14]  As to Edward's income, the court's calculation is supported by the testimony and exhibits of an accountant hired by Sheila as an expert witness. We are not persuaded by Edward's contentions that the accountant's testimony was flawed by various computation errors; such alleged errors go to the weight and credibility of the evidence, and were therefore matters for the trial court's determination alone.  *See Sloan v. Christianson*, 2012 ME 72, ¶ 33, 43 A.3d 978 ("The trial court is not bound to accept any testimony or evidence as fact, and determinations of the weight and credibility to assign to the evidence are squarely in the province of the fact-finder.").  Edward cross-examined the accountant extensively about the asserted errors; the court was aware of Edward's contentions on these points and simply was not persuaded by them.

[¶15]  Edward's argument that his trust fund distributions do not qualify as income is similarly misplaced.  Title 19-A M.R.S. § 2001(5)(A) (2016) expressly defines "[g]ross income" to include trust fund distributions: "Gross income includes income from an ongoing source, including, but not limited to, salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, [and] trust funds . . . ."  Edward argues that because he receives discretionary disbursements to which he has no legal

entitlement, and because the trust distributions are unlikely to continue given evidence that the trusts have lost ninety percent of their value, those amounts do not constitute an "ongoing source" within the meaning of section 2001(5)(A). We disagree.

[¶16] The record contains ample support for the court's finding that Edward's trust distributions are "ongoing" pursuant to section 2001(5)(A), namely, the historical evidence that, despite his medical and business degrees, Edward has supported his family not by his employment, but by utilizing the trust distributions that he received throughout the marriage. Although the court found that Edward "does not have an absolute right to demand a distribution," the court also relied on the evidence that Edward was given a trust disbursement every time he requested one. Given the duplicitous manner in which Edward and his sister conducted themselves during the proceedings, the court did not credit Edward's or his sister's testimony regarding the nature of prior trust distributions and the likelihood of future trust distributions, nor, indeed, any of the evidence on which Edward relied to argue that his annual income is considerably less than that found. *See Sloan*,

2012 ME 72, ¶ 33, 43 A.3d 978. This was the court's prerogative, and we do not disturb the supported findings on this issue.[4] *See id.*

[¶17] Nor did the court err by excluding the voluminous documentation about the family trusts that Edward argues would have contravened the court's findings regarding his income and supported his assertions about the nature of the trust's payments to him and the future viability of the trusts. The court is vested with substantial authority to sanction a party for failure to comply with a discovery order, including by excluding from evidence any documents that are withheld or delayed in discovery. M.R. Civ. P. 37(b)(2)(B); *Camp Takajo, Inc. v. SimplexGrinnell, L.P.*, 2008 ME 153, ¶ 13, 957 A.2d 68. In fashioning a discovery sanction, "the court should take into account the purpose of the specific rule at issue, the party's conduct throughout the proceedings, the party's *bona fides* in its failure to comply, prejudice to other parties, and the need for the orderly administration

---

[4] In addition, although the court found that Edward is voluntarily underemployed, the court did not impute any income to him on that basis. *See* 19-A M.R.S. § 2001(5)(D) (2016) ("Gross income may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity."). Thus, we need not consider Edward's challenge to the court's finding that he is voluntarily underemployed, and we focus instead on the court's calculation of Edward's actual income from employment and trust fund distributions. To the extent the court imputed income to him based on his earning capacity if the trust funds become no longer available in the future, the court's findings are supported by competent record evidence and we discern no abuse of discretion in that determination. *See* *Carolan v. Bell*, 2007 ME 39, ¶ 19, 916 A.2d 945.

of justice." *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 17, 743 A.2d 237. "Because the trial court must weigh these factors and is in a unique position to understand the effects of the failure to comply, both general and specific, we review the court's decisions to impose sanctions for abuse of discretion." *Id.*; *see Harris v. Soley*, 2000 ME 150, ¶ 11, 756 A.2d 499.

[¶18]  Here, the court reasonably excluded the proffered "four inches of documents" on the ground that they were voluminous and contained detailed financial data, yet were not disclosed to Sheila until the week before the second of two trial dates (and well beyond the discovery deadline), despite Sheila's timely discovery requests.  In doing so, the court specifically addressed the factors relevant to a discovery sanction, including Edward's repeated attempts to seek the admission of the same information, the fact that the trial would have been completed before his late disclosure but for accommodations to Edward's schedule, Edward's various attempts to mislead the court, the amount of documentation and the detailed nature of the evidence at issue, and Edward's poor excuses for not having produced the documents earlier.[5]  In addition, contrary to Edward's contention, Sheila did argue that the admission of the documents at that time would cause her

---

[5]  Edward's counsel argued that the documents were not timely disclosed because "they're not under our control" and because "some of the [trusts'] losses were a little embarrassing and [there was] just a need for privacy in general."

prejudice, although the prejudice to a party by the admission of "four inches of documents" containing detailed financial data that were not disclosed until one week before the second day of a trial seems self-evident. Edward was also allowed to present other evidence about the trust that he had timely disclosed, as well as his sister's testimony as to matters within her personal knowledge—notwithstanding that he had represented to the court and to Sheila that his sister would not be appearing as a witness. In these circumstances, we discern no abuse of discretion in the court's exclusion of the trust financial records as a discovery sanction.

The entry is:

Judgment affirmed.

---

Stephen T. Hayes, Esq. (orally), Hayes Law Offices, Augusta, for appellant Edward J. Harshman

Sarah Irving Gilbert, Esq. (orally), Elliott MacLean Gilbert & Coursey, LLP, Camden, for appellee Shiela C. Harshman

Rockland District Court docket number FM-2015-113
FOR CLERK REFERENCE ONLY