MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2024 ME 58
Docket:       Yor-23-401
Submitted
  On Briefs:  June 20, 2024
Decided:      August 6, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, LAWRENCE, and DOUGLAS, JJ.

CYNTHIA (PRAY) WOOD MCKENNA

v.

THOMAS PRAY

HORTON, J.

[¶1]  Thomas Pray appeals from a District Court (Biddeford, *D. Driscoll, J.*) divorce judgment disposing of the parties' marital property and awarding Cynthia (Pray) Wood McKenna $8,400 per month in general spousal support for the remainder of her life.  On appeal, Pray argues that the court double-counted the value of trucks used in his pest-control business, failed to account for the value of the business attributable to Pray's personal goodwill, engaged in improper "double dipping" by relying on Pray's income from the business to determine both the value of the business and the amount of spousal support, failed to consider all relevant spousal support factors or to explain its spousal support award, and abused its discretion in determining that Wood McKenna was entitled to an award of attorney fees.  We conclude that the court

erred only in double-counting the trucks' value in the property allocation and in making findings that did not sufficiently explain the award of spousal support. We therefore vacate the disposition of property and the award of spousal support and remand for further consideration of those components of the judgment. Because the question of attorney fees is not ripe for appeal, we dismiss Pray's appeal with respect to that issue.

## I. BACKGROUND

[¶2] The parties were married in 1996, and their only child is an adult. Wood McKenna filed a complaint for divorce on May 5, 2020. The court held a trial on March 20, March 22, and June 5, 2023. In addition to the parties' testimony, the court heard testimony from a real estate appraiser and competing experts who offered opinions on the value of the pest-control business, Ecotech Pest Control Services, LLC (Ecotech).

[¶3] The court found the following facts, which are supported by competent evidence in the record. *See Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 57, 956 A.2d 110. Wood McKenna, age sixty-five, holds a master's degree in social work and is a licensed clinical social worker. She has a serious medical disease that has damaged her internal organs. Her work hours are limited because of her medical condition. Although her reported

adjusted gross income was $12,747 in 2022, she earned between $25,000 and $35,000 annually during the marriage and could earn as much as $50,000 per year if her medical condition allowed for regular work.

[¶4]   Pray is fifty-five years old and, with minor exceptions, in good health.   He holds a bachelor's degree in entomology.   Pray owns a 100% membership interest in Ecotech and has exclusively controlled and managed the company from the start.   The business has grown substantially since he started it in 2000.   He takes home approximately fifty-five percent of the business's net revenues in the form of salary and distributions.   During the pendency of the case, Pray nearly tripled his salary, from $68,339 in 2021 to $184,968 in 2022.   Between his salary and corporate distributions, Pray's reported adjusted gross income for 2022 was $443,837.

[¶5]  In determining the value of Ecotech, the court largely accepted the $1,363,000 valuation proffered by Pray's expert, who applied a mixed valuation approach, giving eighty percent weight to an income approach to valuation and twenty percent to a market approach.  The court made certain adjustments, however, stating,

> In reaching a fair valuation of this business for purposes of equitably dividing all marital assets of the parties acquired by the parties during their marriage, the court does not consider a risk discount for speculative impact of PFAS legislation in the future,

4

nor normalization of salary. The Court declines to include [Pray's] new salary as part of the valuation based upon the historical record from the CPA, the tax returns, and [Pray's] pretrial management decisions. Adding those deductions back into the equation results in a [fair market value] of approximately $1,800,000 as of December 31, 2022, which is adopted by the court.

[¶6] In its disposition of property, the court awarded Wood McKenna the marital residence, valued at $815,000, making her responsible for $168,869 in debt encumbering the property; three individual retirement accounts (IRAs) valued at $420,095; $679,806 from seven bank and credit union accounts; and personal property valued at $37,700. The court awarded Pray an IRA valued at $13,824; $459,208 from four credit union accounts; the Ecotech business, valued at $1,800,000; and five trucks, valued at $87,000. To equalize the disposition of property, the court ordered Pray to pay Wood McKenna $288,150. Citing several statutory spousal support factors, the court awarded Wood McKenna general spousal support of $8,400 per month for the rest of her life, modifiable in the event of a substantial change in financial circumstances. *See* 19-A M.R.S. § 951-A(4) (2024). The court mentioned certain factors specifically: the substantial length of the marriage, the "vast disparity" in the parties' earnings and earning capacities, the difference between the parties' ages, and Wood McKenna's compromised health.

[¶7]  Pray filed a motion for further findings of fact and conclusions of law pursuant to Rule 52 of the Maine Rules of Civil Procedure.  In the motion, Pray asked the court to adopt in full the business appraisal of his expert to prevent the same income stream from being used both to determine the value of the business and to calculate spousal support.  He also sought findings that the business has value only if he experiences continued managerial success, that a deduction from the value of the business is appropriate because recent PFAS legislation in Maine will affect current pesticide spraying practices, and that spousal support of $1,532 per month for thirteen years is appropriate given the parties' incomes, the property disposition, and all other spousal support factors.  With his motion, Pray filed a notice of appeal.

[¶8]  The court denied the Rule 52 motion without altering or adding to its findings.[1]  Pray's notice of appeal applies to both the judgment and the court's denial of his Rule 52 motion.  *See* M.R. App. P. 2B(c)(2) (providing that when a notice of appeal is filed within the requisite period after a judgment and before a Rule 52 motion has been ruled on, the appeal is "treated as an appeal from both the judgment and the order on the motion").

---

[1]  The court also entered orders correcting Wood McKenna's name change to eliminate a hyphen and clarifying that a personal vehicle was allocated to Pray.  These orders are not pertinent on appeal, though the final judgment entered on remand should eliminate the stray comma between "Wood" and "McKenna" in the court's name-change order.

## II. DISCUSSION

### A. Valuation of Property

[¶9] Pray argues that the court improperly double counted $87,000 worth of Ecotech trucks by including them in the value of the property allocated to Pray even though it had already considered their value as part of the business valuation. He also contends that the court erred in failing to consider the value of his business attributable to his personal goodwill.

### 1. Double Counting of Value of Ecotech Trucks

[¶10] In its judgment, the court indicated that it had considered the value of Ecotech's vehicles "in the business valuation" but in its table regarding property division, it awarded the same vehicles to Pray and included their value in calculating the equalization payment due from Pray. Pray's financial affidavit indicates that only one of the trucks (worth $15,000) had Ecotech's name on the title, and with respect to that vehicle, he indicated that the name on the title was "Ecotech/[Pray] & [Wood McKenna]." Pray's testimony, however, indicated that all the trucks are used for Ecotech's purposes—not personal purposes. Moreover, the Ecotech appraisal by Pray's expert includes automobile expenses and specifically speaks of liabilities on notes for "Ford

2014" and "Ford 2016," confirming that the appraisal that the court relied upon in its valuation of the business incorporated the value of the trucks.

[¶11] Regardless of where title to the vehicles stood, it is clear that the trucks' values were "considered in the business valuation" and again in the award of property to Pray and calculation of the equalization payment. We vacate the property division portion of the judgment and remand the matter for the trial court to reconsider its calculations and any effect of that reconsideration on the division of the marital property. Because the double-counted value of the trucks represents only a small fraction of the entire value of the allocated property, and because the equalization payment is several times greater than the value of the trucks, the court may elect to make the adjustment to the equalization payment without disturbing other provisions of the property division.

## 2. Personal Goodwill

[¶12] Pray concedes that he did not argue to the trial court that Ecotech's value should be adjusted because a portion of its value was attributable to his personal goodwill. Thus, we review this unpreserved issue for obvious error. *See Nason v. Pruchnic*, 2019 ME 38, ¶ 21, 204 A.3d 861.

[¶13]  We have drawn a distinction between enterprise goodwill—a marketable form of goodwill that is based on "the intangible, but generally marketable, existence in a business of established relations with employees, customers, and suppliers"—and personal goodwill, a form of goodwill that is based on an individual's "reputation, knowledge, and skills." *Ahern v. Ahern*, 2008 ME 1, ¶ 11, 938 A.2d 35 (quotation marks omitted).  "As a general principle, the *personal* goodwill of a professional practice . . . is not a species of property.  It is, however, relevant to establishing a professional's earning capacity for purposes of determining support issues." *Id.* ¶ 14 (emphasis added).

[¶14]  Pray argues that the goodwill of his pest control business is based on his individual knowledge and expertise and therefore is not marketable as enterprise goodwill.  We reject this argument because (1) Pray's own expert did not figure in any personal goodwill, though he did factor in a discount based on limitations on marketability and the court relied on that discount; and (2) the evidence does not show that Pray is uniquely qualified to do Ecotech's work, and indeed he has hired others to do much of it.  In these circumstances, the court did not commit obvious error in finding no personal goodwill.

**B.** **"Double Dipping" in the Valuation of the Business and Award of Spousal Support**

[¶15]  What Pray refers to as "double dipping," sometimes called "double counting," "is a term used to describe the supposed unfairness that results when property is awarded to a spouse in equitable distribution but is also treated as a source of income for purposes of calculating maintenance or alimony."  *"Double Dipping*,*"* 14 No. 5 Equitable Distrib. J. 49, 49 (May 1997). Double dipping creates an internal contradiction in the divorce judgment when the court awards an asset to a spouse yet requires the spouse to pay spousal support at a level that necessarily depletes or forces a sale of that awarded asset.  *See id.*  It is "inequitable to force a spouse to invade that spouse's marital assets for the benefit of the other.  Such a concept defeats the presumably careful and equitable distribution of marital property."  *Bonnevie v. Bonnevie*, 611 A.2d 94, 95 (Me. 1992).  "Concern about double counting arose in the context of pensions and retirement benefits, because, in the case of pensions or other retirement assets, the asset *is* the income that will eventually be distributed."  *Oudheusden v. Oudheusden,* 259 A.3d 598, 611 (Conn. 2021) (quotation marks omitted).

[¶16]  "[W]hat constitutes double dipping . . . and whether it is improper in a particular case must be carefully assessed.  Part of the difficulty in

identifying and defining double dipping arises from the wide range of financial structures that can be both an asset and a source of future income for alimony purposes." *Trethewey v. Trethewey*, 233 N.E.3d 1111, 1115 (Mass. App. Ct. 2024) (citation and quotation marks omitted). When double dipping is alleged in a divorce appeal, the judgment as a whole must be evaluated to determine whether it is fair. *See Steneken v. Steneken*, 873 A.2d 501, 505 (N.J. 2005) (requiring that spousal support and property distribution—"both jointly and severally—satisfy basic concepts of fairness" in view of their different but interrelated purposes).

[¶17] Pray argues that the trial court double dipped in its valuation of Ecotech and determination of his income for purposes of spousal support by relying on Ecotech's business income in valuing the business and then attributing the same dollars to Pray as income for purposes of spousal support.[2] We have not previously had occasion to consider in depth whether and under what circumstances a divorce court may consider business income both in valuing a business and in determining a spouse's earning capacity for purposes

---

[2] Although Wood McKenna argues that Pray failed to preserve his argument regarding "double dipping," he did raise it in his Rule 52 motion, asking the court to adopt his expert's treatment of his income to avoid double dipping.

of spousal support. Our analysis must begin at the source of the courts' authority—the statutes governing property division and spousal support.

[¶18] In disposing of the parties' property, "the court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors."[3] 19-A M.R.S. § 953(1) (2024). The factors relevant here include the following:

> **A.** The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>
> **B.** The value of the property set apart to each spouse; [and]
>
> **C.** The economic circumstances of each spouse at the time the division of property is to become effective . . . .

*Id.*

[¶19] "Valuing a closely held [business] for purposes of property division in a divorce proceeding when there is no actual intent to sell the business is, at best, a difficult task. Nonetheless, as with any factual finding, we review the court's determination of an asset's value for clear error." *Starrett v. Starrett*, 2014 ME 112, ¶ 11, 101 A.3d 435. "A trial court's factual finding is not clearly erroneous if there is any competent evidence in the record to support it." *Id.* Here, the $1,800,000 value that the court assigned to the business is supported

---

[3] With some exceptions not applicable here, "'marital property' means all property acquired by either spouse subsequent to the marriage." 19-A M.R.S. § 953(2) (2024).

12

in the record. Moreover, we have previously endorsed a divorce court's reliance on the historical ability of a closely held marital business to generate income in determining the value of the business. *Id.* ¶ 13 (stating that a closely held business's "highest value to the parties" rested in "its continued ability to generate an income").[4]

[¶20] Whereas a just division is the court's goal in allocating property, the purpose of a general spousal support award is "to provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce." 19-A M.R.S. § 951-A(2)(A). The court must consider multiple factors in determining whether to award spousal support, including each party's "income history and income potential" and, especially relevant here, the effect of *"[a]ctual or potential income from marital or nonmarital property awarded or set apart to each party* as part of the court's distributive order pursuant to section 953" on "a party's need for spousal support or a party's

---

[4] In *Starrett v. Starrett*, the divorce court did essentially what the court did here, by awarding a closely held drywall business to the spouse who had been managing it for decades and also requiring that spouse to pay spousal support based on the income generated by the business. 2014 ME 112, ¶¶ 17-18, 101 A.3d 435. However, no "double dipping" issue was raised or discussed, likely because the court found that the business lacked marketability. *Id.* ¶ 13.

ability to pay spousal support." *Id.* § 951-A(5)(E), (P)(1) (emphasis added).[5]

Thus, contrary to Pray's argument, a court considering spousal support must consider the extent to which an asset awarded to a party is capable of generating income above and beyond the value of the asset itself.

[¶21]  Distinguishing between an asset's value and any income it may generate can be a useful means of avoiding double dipping.  The Massachusetts Supreme Judicial Court has expressed the idea as follows:

> So long as it is possible . . . to identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations (thus avoiding redistribution by an alimony or support order of specific assets that already have been equitably assigned), there is nothing improper about including a particular asset within a spouse's

---

[5]  Although this statute is unambiguous, and therefore we need not consider other indicia of its meaning, *see Wawenock, LLC v. Dep't of Transp.*, 2018 ME 83, ¶ 7, 187 A.3d 609, its legislative history discloses a clear intent for courts to consider income-producing property in determining spousal support.  The legislation that enacted 19-A M.R.S. § 951-A(5)(P)(1) (2024) was proposed in response to the recommendations of the Maine Commission on Gender, Justice, and the Courts in its December 4, 1996, report.  *See* L.D. 2276, Summary (119th Legis. 1999); Report of the Maine Commission on Gender, Justice, and the Courts (Dec. 4, 1996), *available at* 49 Me. L. Rev. 135 (1997).  Specifically, paragraph P was added to "require[] the court to consider income that may be available to a party resulting from the court's distribution of the parties' marital and nonmarital property."  Comm. Amend. A to L.D. 2276, No. H-915, Summary (119th Legis. 2000).  The intent was to "ensure the courts do not treat the spousal support award as wholly separate from the division of the parties' property" because "[t]he remedies are interrelated and an assessment of a party's ability to pay or need to receive spousal support should involve the consideration of other sources of available income."  *Id.*; *see also* Testimony of the Maine Family Law Advisory Commission on L.D. 2276 (119th Legis. 1999) before the Joint Standing Committee on the Judiciary 4 (1999) (providing the basis for the Committee Amendment's summary).  The report cited by the Legislature addressed the reality that "men more frequently receive income-producing assets while illiquid assets such as the family residence are distributed to women," which "works to the long-term disadvantage of the economically dependent spouse who is generally female."  Report of the Maine Commission on Gender, Justice, and the Courts, *available at* 49 Me. L. Rev. at 159, 181.

assignable estate, assigning part of it, and then counting its remainder for alimony . . . purposes.

*Dalessio v. Dalessio*, 570 N.E.2d 139, 143-44 (Mass. 1991).

[¶22]  Multiple courts have applied this principle in upholding spousal support awards based on the income generated by a closely held business even when the value assigned to the business itself was derived primarily from its income-generating history.  1 Brett R. Turner, *Equitable Distribution of Property* § 5:12 n.17 (4th ed. 2024) (citing cases).  In *Oudheusden*, for example, the spouse who was obligated to pay support made essentially the same argument Pray makes here: "that double counting is implicated because the businesses were valued using a method that was based on income for property distribution purposes and the alimony award was based on the income from those businesses."  259 A.3d at 614.  The Supreme Court of Connecticut disagreed, concluding that "it is not double counting for a trial court to award a spouse a lump sum representing a portion of the value of a business and also award the spouse alimony that is based on the paying spouse's actual income from that business."  *Id.* at 616; *see also McRae v. McRae*, 20 A.3d 1255, 1265 (Conn. App. Ct. 2011) (affirming a judgment in which the court divided a marital business and then took into account a spouse's earnings from that business in calculating spousal support).  The court also noted that "every jurisdiction that has

considered the issue has concluded that the double counting rule does not apply when the asset at issue is the value of a business, even when the business'[s] fair market value was determined by an income method of valuation." *Oudheusden*, 259 A.3d at 614.

[¶23]  The New Jersey Supreme Court held that when a spouse owns and operates an ongoing business, that spouse's income from the business— whether as salary or as a distribution to the spouse as the owner—continues to be relevant even if the chosen business valuation methodology calls for consideration of the business's income.  *Steneken*, 873 A.2d at 502-09.  In that case, the court reasoned that the spouse's income "did not change merely because the chosen valuation methodology required that the expense his salary represented to the going concern subject to equitable distribution had to be normalized" to represent the reasonable value of his services to the business rather than his actual drawn salary.  *Id.* at 503, 508.

[¶24]  The Supreme Court of Wisconsin likewise has held that

> when an income earning asset is assigned to one spouse . . . , that spouse, generally, receives the full fair market value of that asset at the time of the property division.  Stated otherwise, if the spouse was awarded income property, that spouse could turn around and sell the income property the next day and, thereby, attain the value of the property.  The spouse could also elect to keep the property and earn income from it.  *As the spouse earns income, he or she does not lose the value of the property because he or she always has the*

> *option to sell the property for fair market value.* Therefore, unlike pension benefit payments (up to the present value placed on the pension at the time of the division), the value of investment property is separate from the income it generates. Consequently . . . , counting income from income earning assets will typically not implicate double counting.

*McReath v. McReath*, 800 N.W.2d 399, 415-16 (Wis. 2011) (emphasis added).

In essence, the court reasoned that an income stream should be considered in full because drawing from the earnings of a successful company may be possible without depleting the asset. *See id.* at 417 (indicating that the spouse who is awarded a business "has the option of continuing to generate substantial income from [it] without diminishing its value"); *see also Loutts v. Loutts*, 826 N.W.2d 152, 159 (Mich. Ct. App. 2012) (declining "to adopt a bright-line rule with respect to 'excess' income" and holding "that courts must employ a case-by-case approach when determining whether 'double-dipping' will achieve an outcome that is just and reasonable"); *S.M.S. v. J.B.S.*, 588 S.W.3d 473, 501-02 (Mo. Ct. App. 2019) (allowing the consideration of shareholder earnings from an allocated marital business when determining spousal support); *Steneken*, 873 A.2d at 510 (Long, J., dissenting) (acknowledging that the use of a normalized income figure in determining a business's value for property division and the full income stream when determining spousal support does

not result in "dollar-for-dollar double-counting because more than . . . excess earnings play[] a role in the ultimate valuation").

[¶25]  In response to this on-point authority, Pray cites *Rattee v. Rattee*, 767 A.2d 415, 418-20 (N.H. 2001), in arguing that impermissible double dipping occurred here.  In *Rattee*, the New Hampshire Supreme Court affirmed a decision of the trial court to use the spouse's actual income to determine child support despite its use of a lower, more "reasonable" number in determining the value of the spouse's business and in determining the amount of spousal support.  *Id.* at 418-20.  Although the court affirmed the judgment, the court explicitly noted that "the property division statute, pursuant to which the court valued the company, is unrelated to the child support guidelines," whereas "one factor a court must consider in determining the amount of alimony is the property awarded."  *Id.* at 419.  In requiring income from awarded property to be considered in awards of spousal support, Maine statutes likewise link the property allocation to spousal support but not to child support.  *Compare* 19-A M.R.S. §§ 951-A(5)(E), (P)(1), *with* 19-A M.R.S. § 2001(5) (2024) (defining "gross income" for child support purposes).  In that limited sense, the *Rattee* opinion actually supports the court's reliance here on Pray's income from Ecotech in both its valuation of the business and its spousal support award.

[¶26]  The underlying principle is that double dipping in the context of property allocation and spousal support occurs when the court requires a spouse to pay spousal support in an amount that will inevitably deplete the value of an asset awarded to that spouse, as can occur in the case of a pension or other asset that exists only to provide income.  However, for the court to factor income generated by a business into its determination of spousal support does not necessarily deplete the value of the business.  Pray's expert valued Ecotech at well over one million dollars even though Pray has withdrawn most of Ecotech's net revenues every year in the form of salary and distributions.  Because Ecotech has substantial value apart from the income it generates for Pray, the court did not engage in double dipping by awarding Pray Ecotech's value and, as the spousal support statute contemplates, 19-A M.R.S. § 951-A(5)(P)(1), factoring Pray's income from Ecotech into the award of spousal support.

[¶27]  There is likewise no error in the court's use of Ecotech's income history to determine its value.  Pray's double-dipping argument conflates the consideration of income as a factor in business valuation with consideration of income as a factor in awarding spousal support.  A court's consideration of the income-producing history of a business in valuing the business does not

preclude a separate spousal support award based on that stream of income. *Steneken*, 873 A.2d at 508 (reasoning that "the valuation methodology chosen for equitable distribution should not alter the alimony award" because statutory factors—not the valuation methodology—govern alimony). In other words, a business owner who gains income from the business is subject to the same income-influenced spousal support rules as a non-owner employee, regardless of how the business happens to be valued.

[¶28] Pray further contends that the court committed improper double dipping by rejecting the normalized salary proposed by his expert but then relying, for purposes of spousal support, on an income that exceeded the amount that he earned in salary. We reject this argument for two reasons. First, the court did not err in its finding with respect to normalization because it did not have to credit the expert's opinion. *See Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923. Second, the court's finding that Pray's actual salary—not a normalized salary—must be used in business valuation is immaterial to the double-dipping analysis. Although the court rejected the normalization of Pray's salary and therefore found that the business had a higher value than Pray's expert had suggested, the court could nonetheless consider all

components of Pray's income—whether through salary or distributions—in determining spousal support. *See* 19-A M.R.S. § 951-A(5)(E), (P)(1).

## C. Determination of the Amount of Spousal Support

[¶29] The remaining question is whether the court erred or abused its discretion in its consideration of Pray's income from salary and distributions along with the other spousal support factors, *see id.* § 951-A(5), in establishing its spousal support award. Pray makes two arguments on this issue. First, he contends that the court's findings are insufficient to explain how the court arrived at the $8,400 per month figure. Second, he contends that court erred by failing to consider that it had awarded assets to Wood McKenna that could cover her monthly expenses and ensure a reasonable standard of living.[6]

[¶30] We review a spousal support determination for an abuse of discretion. *See Carter v. Carter*, 2006 ME 68, ¶ 19, 900 A.2d 200. "In determining whether an award of spousal support is appropriate, the court has significant discretion in both whether and in what amount to award spousal support, with the bounds of that discretion defined by factors set forth in 19-A M.R.S. § 951-A(5) . . . ." *Durkin v. Durkin*, 2019 ME 32, ¶ 10, 203 A.3d 812

---

[6] Although Pray also argues that the court erred in finding that Wood McKenna has a debilitating disease that limits her earning capacity, that finding is supported by competent evidence in the record. *See Jandreau v. LaChance*, 2015 ME 66, ¶ 14, 116 A.3d 1273 (indicating that we review findings reached in determining spousal support for clear error).

(citation and quotation marks omitted). "After considering all factors, a court may rely on some factors and not others to determine its spousal support award . . . ." *Carter*, 2006 ME 68, ¶ 20, 900 A.2d 200.

[¶31] Particularly given that Wood McKenna is ten years older than Pray and faces health challenges at the end of a lengthy marriage, the court did not abuse its discretion in considering whether, despite the assets awarded to her, general spousal support in some amount was warranted to enable her to maintain a reasonable standard of living without having to spend down or liquidate her assets. *See* 19-A M.R.S. § 951-A(2)(A); *Bonnevie*, 611 A.2d at 95 (holding that a court may determine that "it is inequitable to force a spouse to invade that spouse's marital assets for the benefit of the other"). The court specifically indicated that modification was available "as allowed by law, including remarriage or cohabitation in a marriage like state," *see* 19-A M.R.S. § 951-A(4), but predicated its award on the existing income potential of each party, as it was required to do, *see id.* § 951-A(2)(A).

[¶32] However, we agree with Pray's contention regarding the absence of findings supporting the spousal support award. Although the judgment alluded to Pray's varying income from Ecotech over the years, it contains no finding in terms of either a dollar amount or a range indicating what amount in

income or earning capacity the court assigned to Pray for purposes of spousal support. We cannot infer that the court implicitly made the findings necessary to support the spousal support award because Pray's motion for findings specifically requested the court to set Pray's income from Ecotech for purposes of spousal support at $175,000—the same figure that was assumed in the valuation analysis that the court adopted for Ecotech. *See Sears v. Sears*, 2023 ME 45, ¶ 18, 299 A.3d 15. Likewise, although Pray's motion for findings requested a finding that income from the tax-deferred and cash assets awarded to Wood McKenna would yield about $50,000 in income annually, *see* 19-A M.R.S. § 951-A(5)(P)(1) (requiring a court to consider, in awarding spousal support, "[a]ctual or potential income from marital or nonmarital property awarded or set apart to each party as part of the court's distributive order pursuant to section 953"), the court did not make any finding regarding income from those assets and we cannot infer the necessary finding. There is also no indication of how the court decided to award Wood McKenna support of $8,400 monthly.

[¶33] In *Sears*, we vacated an award of spousal support because the court "did not . . . make an express finding regarding [the spousal support obligor's] current or projected income for purposes of the spousal support award.

Although the general findings it did make . . . are useful, we are unable to determine how the court arrived at the figure of $2,000 per month." 2023 ME 45, ¶ 19, 299 A.3d 15 (footnote omitted). This case presents the same difficulty, and we therefore vacate the award.

## D. Attorney Fees

[¶34] When "the court has not yet issued a final order fixing any amount of fees and costs, . . . [a] challenge to that portion of the court's judgment is not ripe for our review." *Harshman v. Harshman*, 2017 ME 60, ¶ 11 n.3, 158 A.3d 506. Accordingly, we dismiss as unripe Pray's appeal from the decision to award Wood McKenna attorney fees. Awaiting a final judgment best serves the interest of judicial economy and averts the potential for piecemeal appeals. *Id.* Moreover, because we vacate the judgment in part and remand for further proceedings, the issues of whether to award attorney fees and, if so, in what amount are open for consideration on remand.

The entry is:

> Appeal dismissed as unripe with respect to attorney fees. Divorce judgment vacated with respect to the property disposition and spousal support award. Remanded for further proceedings as to those portions of the judgment

24

and for the correction of Wood McKenna's name change.[7]

---

Albert Hansen, Esq., Hansen Law Offices, PLLC, Kennebunk, for appellant Thomas Pray

Dana E. Prescott, Esq., Prescott Jamieson Murphy Law Group, LLC, Saco, for appellee Cynthia (Pray) Wood McKenna

York District Court docket number FM-2020-59
FOR CLERK REFERENCE ONLY

---

[7] We acknowledge that the trial judge has retired and that a successor judge will be presiding on remand, as permitted by M.R. Civ. P. 63(a).